[No. B045115. Second Dist., Div. Five. May 13, 1991.]

MARIAN P. GRIFFITH et al., Plaintiffs and Appellants, v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
Defendant and Appellant.

## COUNSEL

Curtis L. Gemmil for Plaintiffs and Appellants.

Spray, Gould & Bowers and James S. Link for Defendant and Appellant.

## OPINION

**ASHBY, Acting P. J.**—The issue presented by this appeal is: Prior to the filing of a lawsuit or another formal proceeding, can a third party claimant require an insurance carrier to release the policy limits of an insurance contract?

### FACTS

Marian P. Griffith and Cecilio Guerra (hereinafter Claimants) each retained Attorney Curtis L. Gemmil to represent them in personal injury lawsuits arising from two separate motor vehicle accidents. The other persons involved in the accidents were both insured by State Farm Mutual Automobile Insurance Company, a corporation (hereinafter Insurer).[1] Claimants did not immediately file lawsuits against the two named insureds. However, through their attorney, Claimants requested Insurer disclose the amount of coverage provided in the two separate insurance contracts. When Insurer refused to disclose the information requested, Claimants brought the within action claiming they were entitled to the information even though no lawsuit or other formal proceeding had been filed.

Claimants' civil suit alleged four causes of action: (1) breach of implied in law contract; (2) breach of Insurance Code section 790.03, subdivision (h); (3) breach of the implied covenant of good faith and fair dealing; and (4) declaratory relief, requesting a judicial determination that Claimants had a right to the requested policy limit information. After partially sustaining two demurrers, the trial court held that Claimants could only assert a cause of action for declaratory relief.

Proceeding on the declaratory relief cause of action, both parties brought summary judgment motions. The parties agreed that there were no material factual disputes and that the sole issue was whether Insurer had to informally

---

[1]The second amended complaint also named two employees of Insurer, only one of whom appears to have been served. On appeal, however, Claimants state that both were "dropped" from the suit and thus claimants appear to have abandoned any rights against these named parties.

disclose the policy limits of its insureds prior to the filing of lawsuits or other formal proceedings against the insureds. The trial court held that Claimants had a right to obtain the information requested and that Insurer had a duty to provide the information regarding the policy limits. Judgment declaring these rights was accordingly entered.

On appeal Claimants assert the court erred in sustaining the demurrers with regard to the first three causes of action and argue they should not have been limited to a cause of action for declaratory relief; they appeal from the judgment which dismissed the first three causes of action. In its cross-appeal, Insurer appeals from the judgment determining that Insurer must disclose the policy limits. We hold the trial court appropriately granted the demurrer with regard to the first three causes of action. We also hold the court erred in concluding Insurer was obligated to disclose the policy limits at the time of Claimants' request.

## DISCUSSION

Claimants' appeals are from the judgment entered subsequent to the sustaining of the second demurrer. Thus we determine if the pertinent complaint stated facts sufficient to constitute a cause of action. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) Insurer appeals from the judgment entered upon the granting of a summary judgment motion. The standard upon review of summary judgment is whether there are triable issues of material fact. (Code Civ. Proc., § 437c; *Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].) The parties agree there are no material issues of fact and agree that all issues can be determined as a matter of law.

Presently there are numerous ways in which Claimants could have obtained the information they sought. Had Claimants filed personal injury lawsuits, there is no question the policy limits of the insurance contracts would have been discoverable. (*Laddon* v. *Superior Court* (1959) 167 Cal.App.2d 391, 396 [334 P.2d 638]; *Pettie* v. *Superior Court* (1960) 178 Cal.App.2d 680, 683 [3 Cal.Rptr. 267]; cf. *Smith* v. *Superior Court* (1961) 189 Cal.App.2d 6, 11 [11 Cal.Rptr. 165, 88 A.L.R.2d 650].) Additionally, had Claimants attempted to perpetuate testimony by collateral proceedings, the existence of an insurance policy and its limits would have been discoverable. (*Superior Ins. Co.* v. *Superior Court* (1951) 37 Cal.2d 749, 751, 754 [235 P.2d 833]; *Demaree* v. *Superior Court* (1937) 10 Cal.2d 99, 103 [73 P.2d 605]; Code Civ. Proc., § 2035.) Further, Insurer acknowledges that had its insureds given authorization to release the information (Ins. Code, § 791.13, subd. (a)), Insurer would have done so. Lastly, had a lawsuit been filed against the insureds and judgments rendered against the insureds, Claimants

would have been able to bring suit directly against Insurer to recover the judgment based on the policy. (*Malmgren* v. *Southwestern A. Ins. Co.* (1927) 201 Cal. 29, 33-35 [255 P. 512]; Ins. Code, § 11580.)

Here, the question turns on whether Claimants have a right to this information prior to the filing of a formal proceeding and whether Insurer is prevented from or obligated to disclose the policy limits without an insured's authorization.

Insurer does not suggest the information must permanently be sealed. Rather its argument focuses on when Insurer is obligated to, foreclosed from, or permitted to disclose to a potential claimant the policy limits of a contract.

*Insurance Information and Privacy Protection Act*

 Insurer's suggestion that the Insurance Information and Privacy Protection Act (Ins. Code, § 791 et seq.) specifically prohibits the release of the policy limits at this stage of the controversy has merit.

California was one of the first states to adopt the National Association of Insurance Commissioners (NAIC) Insurance Information and Privacy Protection Model Act.[2] The purpose of the act, as delineated in Insurance Code section 791, is to "establish standards for the collection, use and disclosure of information gathered in connection with insurance transactions by insurance institutions, . . . to maintain a balance between the need for information by those conducting the business of insurance and the public's need for fairness in insurance information practices, including the need to minimize intrusiveness; . . . to limit the disclosure of information collected in connection with insurance transactions; and to enable insurance applicants and policyholders to obtain the reasons for any adverse underwriting decision." (Ins. Code, § 791.)

The act specifies when an insurance carrier must disclose to its insureds or potential insureds information received which pertains to insurance decisions, such as the denial of benefits. The act limits the dissemination of information about insureds to other persons and entities, and provides remedies to persons whose rights are violated if information is inappropriately released. The act is lengthy and detailed.

The Legislature has recognized that in a modern world, many businesses and institutions accumulate vast amounts of information about people which

---

[2]The act was originally added by Statutes 1980, chapter 1214, section 1, page 4102. It was modified soon thereafter in accordance with the revisions to the model act adopted by the NAIC. (Stats. 1981, ch. 106, § 1.3, p. 795, eff. June 29, 1981; Stats. 1981, ch. 121, § 1, p. 856, eff. June 30, 1981.)

should not automatically be released to others. By enacting the Insurance Information and Privacy Protection Act, the Legislature acknowledged that an insurance company is a repository of an enormous amount of information. Information is compiled when a carrier determines if insurance should be issued or cancelled. Additionally, when an accident occurs, information is accumulated in anticipation of potential claims. Recognizing the information so compiled would be considered private by an insured or perhaps legally privileged as work product, the authors of the act strictly limited the dissemination of information contained in insurance files. Specifically, unless otherwise provided, carriers may not disclose "personal" or "privileged" information. (Ins. Code, § 791.13.)

"Personal" and "privileged" information is defined in the act as:

" 'Personal Information' means any individually identifiable information gathered in connection with an insurance transaction from which judgments can be made about an individual's character, habits, avocations, finances, occupation, general reputation, credit, health or any other personal characteristics. 'Personal information' includes an individual's name and address and 'medical record information' but does not include 'privileged information.' " (Ins. Code, § 791.02 subd. (s).)

" 'Privileged information' means any individually identifiable information that both: (1) Relates to a claim for insurance benefits or a civil or criminal proceeding involving an individual. (2) Is collected in connection with or in reasonable anticipation of a claim for insurance benefits or civil or criminal proceeding involving an individual. . . ." (Ins. Code, § 791.02, subd. (v)(1), (2).)

The legislative history does not further define "personal" or "privileged"; the NAIC could not provide additional information as to the intended meaning of these terms; and to our knowledge, no other state has further defined these words. ■ We construe these statutes "to produce a reasonable result consistent with the legislative purpose. [Citation.] The object to be achieved and the evil to be prevented are prime considerations in determining legislative intent." (*People* v. *Jeffers* (1987) 43 Cal.3d 984, 997 [239 Cal.Rptr. 886, 741 P.2d 1127].)

■ The policy limits are "personal" because they are "gathered in connection with an insurance transaction from which judgments can be made about an individual's character, . . . finances, . . . credit, . . . or other personal characteristics." (Ins. Code, § 791.02 subd. (s).) When an insurance company enters into a contract of insurance, it must determine the risks involved, the rates to be charged, and other terms of coverage. Inherent

within that decision is the carrier's evaluation of information which judges the insured's character. Additionally, in that an insurance policy can be considered an asset, it would be considered information about the insured's finances and credit. Similar to other records of one's financial affairs, persons reasonably assume the custodian of these records will not disclose the details thereof to others. (*Valley Bank of Nevada* v. *Superior Court* (1975) 15 Cal.3d 652, 656 [125 Cal.Rptr. 553, 542 P.2d 977].) Thus, the policy limits are "personal" as they are "gathered in connection with an insurance transaction."

To reach this conclusion we have also examined how the Legislature views such data in other contexts.

California protects privacy and personal information in numerous ways.[3] ■ Covering a broad spectrum of information, ranging from financial information to health records to student records, these protections are additional expressions of the recognition that people have a privacy right which can be invaded only upon certain circumstances. They demonstrate the public policy that others are not necessarily entitled to know details about our private lives. Like the Insurance Code, these laws do not foreclose the release of information in all circumstances, but rather limit disclosures to situations in which there is a legitimate need to know.

■ Disclosure issues usually arise during discovery when one party seeks information from or about another. In this arena, courts compare the interests of one party and the other party's need for the information. "The showing which a litigant must make varies, depending on the weight accorded the privacy interest. . . . [¶] [W]hen a litigant's request for discovery touches another person's privacy interest, a litigant is not as free to obtain information as [the litigant] might otherwise be. [Citation.] A

---

[3](E.g., Cal. Const., art. I, § 1 [inalienable rights including privacy; additional constitutional protection seen as necessary to protect against the "increased surveillance and data collection activity in contemporary society" (*White* v. *Davis* (1975) 13 Cal.3d 757, 774 [120 Cal.Rptr. 94, 533 P.2d 222])]; *Valley Bank of Nevada* v. *Superior Court, supra*, 15 Cal.3d 652 [right of privacy protects one's confidential financial affairs]; Civ. Code, § 1798 et seq. [Information Practices Act of 1977 protecting data maintained by governmental agencies]; Civ. Code, § 1799 et seq. [limitations on business regarding bookkeeping services]; Civ. Code, § 56 et seq. [Confidentiality of Medical Information Act]; Ed. Code, § 67139.5 [action for disclosing confidential information regarding student record]; Pen. Code, § 630 et seq. [crimes relating to eavesdropping]; Code Civ. Proc., § 1985.3 [notice to consumer when personal records sought]; Gov. Code, § 7460 et seq. [California Right to Financial Privacy Act]; Health & Saf. Code, § 11977 [confidentiality of narcotics and drug abuse program records]; Health & Saf. Code, § 1795 [Patient Access to Health Records]; Unemp. Ins. Code, § 1094 [confidentiality of unemployment records]; Welf. & Inst. Code, § 4514 [confidentiality of records of persons with developmental disability]; and Ins. Code, § 791 et seq. [Insurance Information and Privacy Protection Act].)

particularized need for the information must be established. How compelling this need must be will depend on the importance of the privacy interest involved." (*Davies* v. *Superior Court* (1984) 36 Cal.3d 291, 304 [204 Cal.Rptr. 154, 682 P.2d 349], Bird, C. J., conc.)

In another area, if a carrier is served with a subpoena asking for information about an insured, the subpoenaing party must give notice to the insured, as a consumer about whom personal records are sought. (Code. Civ. Proc., § 1985.3.) Code of Civil Procedure section 1985.3 provides procedures enabling an insured to prevent the disclosure of any information maintained by the insurance carrier. By including insurance companies in the list of organizations covered by this statute,[4] the Legislature repeated its concerns that an enormous amount of material is maintained in insurance company files, that the records of the insured should only be released upon a showing that the information should be disclosed, and that as the collector and holder of such information carriers should not freely release information.

■ In line with the policy of protecting a citizen's privacy rights, the Insurance Code must be interpreted to include policy limits as an item which is "personal."

However, even though the policy limits are "personal," the Insurance Code authorizes the release of such information in a number of different situations. An authorization from the insured enables the carrier to release the information. (Ins. Code, § 791.13, subd. (a).) Additionally, disclosure is authorized if it is "[o]therwise permitted or required by law." (Ins. Code, § 791.13, subd. (g).[5]) Claimants present numerous arguments suggesting that even if the information is "personal" they were entitled to the information requested. We also note that even if the policy limits were not "personal" under the Insurance Information and Privacy Act, Claimants still have the burden to show they have a right to the information.

## Case Law

■ Claimants first suggest that existing case authority gives them a right to the information they sought. This suggestion is not persuasive. None of

---

[4]This statute protects the unauthorized release of information compiled by numerous businesses and entities besides insurance companies. Those entities include, among others, financial institutions, medical practitioners, public utilities and schools. (Code Civ. Proc., § 1985.3, subd. (a)(1).)

[5]For example, in *Colonial Life & Accident Ins. Co.* v. *Superior Court* (1982) 31 Cal.3d 792-793, footnote 10 [183 Cal.Rptr. 810, 647 P.2d 86], the court indicated that in discovery a court may order an insurance carrier to release information about insureds not named in a bad faith lawsuit if the information is reasonably calculated to lead to admissible evidence and the court has established procedures to notify the insureds information is being sought and released.

the case authority cited by Claimants mandates that the information be released prior to the filing of a lawsuit or the filing of some other formal proceeding, such as a petition to perpetuate testimony.[6]

*Superior Ins. Co.* v. *Superior Court, supra,* 37 Cal.2d 749 and *Demaree* v. *Superior Court, supra,* 10 Cal.2d 99 discuss Code of Civil Procedure section 2035 which provides a mechanism to discover information prior to the filing of an action. This statute allows persons who expect to be parties to an action to file a petition and to obtain an order allowing perpetuation of testimony.

As early as 1937, California courts have recognized that if a person meets the requirements of Code of Civil Procedure section 2035, a court must order an insurance company to release the policy limits of a particular insurance policy. However, this conclusion is not reached simply because a potential claimant requests the information. Rather, it is because the potential claimant has proved to the court a legitimate right to know. The release of the policy limits upon the petition is based upon the claimant's proof to the court that the provisions of the policy of insurance are germane to the claimant's cause and "by such application that the [claimant] expects to be a party to an action; the names of the persons who it is expected will be adverse parties are given as well as the names of the witnesses to be examined; a general outline of the facts expected to be proved is stated; and it further appears that the proof of such facts is desired and necessary to establish matters which it may hereafter become material to establish." (*Superior Ins. Co.* v. *Superior Court, supra,* 37 Cal.2d at p. 753; *Demaree* v. *Superior Court, supra,* 10 Cal.2d at p. 103.) The information is to be released by the carrier after the petition is filed because the potential claimant has demonstrated in the petition that there is a serious potential claim against the insured and that the release of the policy limits may assist in resolving the matter. Filing the petition shows the potential claimant expects to bring an action and is not simply "fishing" for information.

Similarly, once a lawsuit has been filed, and thus the potential claimant has demonstrated a serious claim is being asserted against the insured, courts have recognized that an adverse party has a " 'discoverable interest' in [the other party's] liability insurance which arises with the '*very pendency*' *of the action* against the assured; that therefore, the existence and policy limits of the [insured's] liability insurance are relevant to the subject matter

---

[6]In *State Farm Fire & Casualty Co.* v. *Keenan* (1985) 171 Cal.App.3d 1 [216 Cal.Rptr. 318], claimants contended an insurer was liable for fraudulent concealment by failing to disclose in an answer to an interrogatory the existence of a second insurance policy. However, the court did not determine if a cause of action exists for failing to disclose the existence of the policy because the court held the second policy would not have covered the claim.

involved in the personal injury action . . . ." (*Pettie* v. *Superior Court, supra,* 178 Cal.App.2d at p. 683, italics added; *Laddon* v. *Superior Court, supra,* 167 Cal.App.2d 391.) The courts have acknowledged that the disclosure of the information will facilitate the resolution of the pending controversy. (*Pettie* v. *Superior Court, supra,* 178 Cal.App.2d at p. 689.) However, this right to know arises upon the pendency of the suit. Contrary to claimant's assertion, the right to the policy limits does not arise prior to that time.[7]

Formally taking a step toward litigation, such as filing a petition to perpetuate testimony or filing a lawsuit indicates there is a serious problem. Such conduct assures that the third party claimant has no ulterior purpose, such as snooping for information. (Cf. *White* v. *Davis, supra,* 13 Cal.3d at p. 775.) It protects the privacy of insureds from the curious who may only wish to bring nuisance claims. By controlling the timing of the release of information we protect the premature release of confidential data. (Cf. *Cobb* v. *Superior Court* (1979) 99 Cal.App.3d 543, 550-551 [160 Cal.Rptr. 561].)

*Financial Responsibility Law*

■ Claimants also assert the Financial Responsibility Law requires disclosure of this information. However, contrary to this assertion, the Financial Responsibility Law (Veh. Code, § 16000 et seq.) does not specifically mention policy limits nor authorize disclosure thereof.

The Financial Responsibility Law requires drivers of every motor vehicle involved in a motor vehicle accident resulting in personal injury or property damage greater than $500, to demonstrate financial responsibility (i.e., the existence of insurance or other financial responsibility) on a report filed with

---

[7]Claimants cite *General Ins. Co. of America* v. *Whitmore* (1965) 235 Cal.App.2d 670 [45 Cal.Rptr. 556] to suggest they are entitled to the information upon the happening of the accident. In *General Ins. Co.* the court held that an insurance company had a right to bring a declaratory relief action against its own insureds and others involved in the accident to determine whether the insurance policy covered the claim, whether the other tortfeasors would also be responsible and if recovery was obtained against the tortfeasors, the pro rata basis for payment by the various carriers. In light of this inquiry, the court stated, "Immediately upon the happening of the [accident, the tortfeasees] had an interest in the insurance policy of the asserted tortfeasors and were entitled to information as to its existence and its limits." (*Id.* at p. 674.) This language cannot be used to suggest the rights of a third party claimant accrue upon the happening of the accident. A carrier's rights against other carriers to determine respective responsibilities are different from those of an injured claimant against a tortfeasor and the tortfeasor's insurance company. Additionally, in *General Ins. Co.* in making its statement, the court cited *Laddon* v. *Superior Court, supra,* 167 Cal.App.2d at pages 394-396, which, as we have indicated above, permitted the discovery of information only upon the " 'pendency' of the *action.*" (*Id.* at p. 395, italics added; *Superior Ins. Co.* v. *Superior Court, supra,* 37 Cal.2d at p. 754.)

the Department of Motor Vehicles. Vehicle Code section 16005 specifically limits the use of the report and its contents. The report is for the "confidential use of the department and any other state department requiring such information." (Veh. Code, § 16005, subd. (a).) Persons "having a proper interest"[8] in the report may, upon request, receive information as specified by the statute. However, the statute does not state that policy limits of an insurance policy are to be included on the report. Persons having a proper interest in the report are authorized by Vehicle Code section 16005 to receive only the following data: "(1) The names and addresses of persons involved in the accident. [¶] (2) The registration numbers and descriptions of vehicles involved in the accident. [¶] (3) The date, time, and location of the accident. [¶] (4) Any suspension action taken by the department. [¶] (5) The names and addresses of insurers." If the Legislature wanted to include the policy limits as information to be revealed, it easily could have added it to those items delineated in the statute.

### Contractual Claims

 Claimants also assert that "a contractual relationship exists for the purpose of disclosure of policy information." Claimants base three of their causes of action upon contractual theories.

#### a. Implied Contract

We are not persuaded by Claimants' suggestion that they are entitled to the information because they are third party beneficiaries of the contract between Insurer and its insureds. Insurer's duties under the contract of insurance flow to the insureds. Claimants, as third party claimants, are not contracting parties. (*Murphy* v. *Allstate Ins. Co.* (1976) 17 Cal.3d 937, 944 [132 Cal.Rptr. 424 [553 P.2d 584].) Claimants are precluded from suing on the contracts unless they receive an assignment of rights from the insureds or until there is a judgment in their favor. (*Zahn* v. *Canadian Indem. Co.* (1976) 57 Cal.App.3d 509, 513-514 [129 Cal.Rptr. 286]; *Muraoka* v. *Budget Rent-A-Car, Inc.* (1984) 160 Cal.App.3d 107, 121 [206 Cal.Rptr. 476]; *Malmgren* v. *Southwestern A. Ins. Co., supra,* 201 Cal. 29.)

#### b. Insurance Code Section 790.03

We need say very little about Claimants' assertion that when Insurer refused to divulge the policy limits, Claimants became entitled to assert a

---

[8]Persons authorized to receive this information include, among others, "[a]ny person injured in the accident" and "[t]he owners of vehicles or property damaged in the accident." (Veh. Code, § 16005, subd. (b)(3), (4).)

statutory cause of action based upon Insurance Code section 790.03.[9] Third party claimants do not have a "private civil cause of action against an insurer that commits one of the various acts listed in section 790.03, subdivision (h)." (*Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 304 [250 Cal.Rptr. 116, 758 P.2d 58]; *Wade* v. *20th Century Ins. Co.* (1988) 206 Cal.App.3d 32, 36 [253 Cal.Rptr. 361].)[10]

Thus, the court properly sustained Insurer's demurrer as to Claimants' causes of action for breach of implied covenant in law, breach of the implied covenant of good faith and fair dealing and breach of Insurance Code section 790.03, subdivision (h).)

## CONCLUSION

We are mindful of the realities of personal injury litigation and the fact that many suits can be avoided with the cooperation of all concerned. The expense of litigating may, in certain situations, be drastically reduced if all pertinent information is informally exchanged. We wish to encourage cooperation among claimants, insureds, insurance carriers and attorneys. All suits do not require fierce, combative litigation and expensive, protracted discovery. Unnecessary filings, extensive discovery and lengthy court battles are expensive emotionally and financially; additionally, they harm the reputations of the judicial system, attorneys and the insurance industry. Thus, when a quick exchange of information will settle a dispute, we encourage carriers to seek authorization from insureds which would enable the carrier to release the policy limits. However, until the Legislature specifically authorizes the disclosure of this information, and if the insured refuses to provide authorization for its release, a third party claimant does not have a right to know the policy limits of another's insurance policy prior to the filing of a formal proceeding.

The trial court was correct in granting the demurrer on the first three causes of action (breach of implied in law contract, breach of Ins. Code,

[9]Claimants' initial complaint alleged a cause of action based upon a violation of Insurance Code section 790.03, subdivision (h). Thereafter, Insurer brought its first demurrer. The notice of ruling written by Insurer stated that "[t]he judge noted in his ruling that he did not want to see any purported cause of action for breach of Insurance Code § 790.03(h)." Following this dictate, Claimants did not repeat the claim in their first amended complaint. Given the tenor of the court's statement, Claimants reasonably construed the judge's ruling to be a sustaining of the demurrer on that count without leave to amend.

[10]Claimants' suit was filed 11 days after *Moradi-Shalal* v. *Fireman's Fund Ins. Companies*, *supra*, 46 Cal.3d 287, but prior to *Moradi-Shalal* becoming final. *Moradi-Shalal* held that its decision would not apply to "those cases seeking relief under section 790.03 filed before our decision here becomes final." (*Id.* at p. 305.) Thereafter, however, the court went on to conclude that for those pending cases, "there must be a conclusive judicial determination of the insured's liability before the third party can succeed in an action against the insurer under section 790.03." (*Id.* at p. 306.) Thus, Claimants' claims are barred.

§ 790.03, subd. (h), and breach of the implied covenant of good faith and fair dealing). The trial court was incorrect in finding upon summary judgment that claimants had a declaratory relief cause of action enabling them to informally obtain the policy limits.

## DISPOSITION

The judgment is reversed with directions to enter judgment against Marian P. Griffith and Cecilio Guerra. Costs are awarded to State Farm Mutual Automobile Insurance Company, a corporation.

Boren, J., and Grignon, J., concurred.

Appellants' petition for review by the Supreme Court was denied August 15, 1991.