[No. S065841. July 24, 2000.]

CONNECTICUT INDEMNITY COMPANY et al., Petitioners, v.
THE SUPERIOR COURT OF SAN JOAQUIN COUNTY, Respondent;
CITY OF LODI, Real Party in Interest.

MARYLAND CASUALTY COMPANY et al., Petitioner, v.
THE SUPERIOR COURT OF SAN JOAQUIN COUNTY, Respondent;
CITY OF LODI, Real Party in Interest.

808

## COUNSEL

Archer, McComas, Breslin, McMahon & Chritton, W. Eric Blumhardt, Amy S. Hutchins and Sean D. White for Petitioner Connecticut Indemnity Company.

Sinnott, Dito, Moura & Puebla, Randolph P. Sinnott, James M. Ratzer and Kathleen Hurly for Petitioner LMI Insurance Company.

Wiley, Rein & Fielding, Thomas W. Brunner, Daniel E. Troy, C. Russell Clause, N. Christopher Hardee; Kroloff, Belcher, Smart, Perry & Christopherson, Thomas O. Perry; O'Connor, Cohn, Dillon & Barr and Holly S. Burgess for Petitioners Maryland Casualty Company, Maryland Insurance Group and Northern Insurance Company of New York.

Rivkin, Radler & Kremer, Donald T. McMillan and George J. Keller for Petitioner Fireman's Fund Insurance Company.

Bien & Summers and Elliot L. Bien for Insurance Environmental Litigation Association as Amicus Curiae on behalf of Petitioners.

No appearance for Respondent.

Randall A. Hays, City Attorney; Envision Law Group, Michael C. Donovan, Cecelia C. Fusich, John R. Till and Brian R. Paget, Assistant City Attorneys; Zevnik Horton Guibord McGovern Palmer & Fognani, Bret A. Stone and Adam Babich, Deputy City Attorneys, for Real Party in Interest.

Meyers, Nave, Riback, Silver & Wilson and Rick W. Jarvis for 17 California Cities and Counties as Amici Curiae on behalf of Real Party in Interest.

## OPINION

**GEORGE, C. J.**—We granted review to determine whether a city council, pursuant to a legislative investigation of toxic contamination of local groundwater, is authorized by Government Code section 37104 to issue subpoenas for the purpose of obtaining information relating to liability insurance coverage and claims concerning parties believed to be legally responsible for the contamination, where it appears likely that the city also might employ that same information in the course of prospective litigation. As we shall explain, controlling authority establishes that a city may issue legislative subpoenas when it has been authorized by ordinance or similar enactment to do so, when issuance of the subpoenas serves a valid legislative purpose, and when the witnesses or material subpoenaed are pertinent to the subject matter of a legislative investigation. We conclude, contrary to the determination reached by the majority of the Court of Appeal, that the city satisfied these requirements in this case.

### I.

The record indicates that 600 acres of groundwater in a central business and residential area of the City of Lodi (subsequently referred to as Lodi, or the city) are contaminated with a number of carcinogenic substances, including perchloroethylene and trichloroethene. Groundwater is Lodi's sole source of drinking water. The city has shut down at least three municipal water wells because of this contamination.

In early 1997, the Lodi City Council adopted resolution No. 97-09, which established a legislative proceeding to address the contamination problem. The council resolved to investigate the adequacy of existing environmental legislation, craft new municipal legislation if needed and recommend appropriate action at the state or federal level, and also to investigate "among other things, [(i)] the nature and source of any toxic contamination at and emanating from within the City of Lodi, [(ii)] . . . potential sources of

releases of the contamination, [(iii)] . . . *potential methods to finance the abatement, if needed, of said contamination,* [(iv)] . . . *the adequacy and sufficiency of regulatory schemes at the municipal, state, and federal levels,* [(v)] . . . *the adequacy and sufficiency of liability schemes and financial responsibility requirements at the municipal, state, and federal levels,* and [(vi)] . . . *the adequacy, sufficiency, and limitations of financial responsibility mechanisms, including without limitation, liability insurance and other mechanisms in the private and commercial sector of the community.*" (Italics added.)[1] The resolution also authorized the council's advisory committee to

---

[1] The resolution provides:

"WHEREAS, the California Environmental Protection Agency, Department of Toxic Substances Control, the California Regional Water Quality Control Board—North Coast Region, and their various environmental consultants have conducted soil and groundwater investigations of the Lodi Groundwater Site ('Site'), consisting of approximately six hundred acres which encompasses the City of Lodi's central business district and peripheral commercial and residential community, from 1989 through 1996; and

"WHEREAS, in the performance of these investigations numerous properties or parcels were identified as potential sources of solvent releases within the Site; and

"WHEREAS, as a result of these investigations, multiple areas of soil and subsurface contamination by tetrachloroethene, trichloroethene and other chlorinated solvents have been detected throughout the Site; and

"WHEREAS, as a result of these investigations and the discovery of the contamination, the City Council of the City of Lodi has grown increasingly concerned about the protection of public health, safety, welfare, the environmental and natural resources within the jurisdiction of the City of Lodi, and the preservation and restoration of property values within the City of Lodi.

"Now, THEREFORE, BE IT RESOLVED, that based on the above, the City of Lodi does hereby establish a legislative proceeding before the City Council of the City of Lodi to investigate the adequacy of existing legislative environmental schemes and to take such action, including legislation at the municipal level and recommendations to the appropriate state or federal legislative body, as the City Council deems appropriate.

"Now, THEREFORE, BE IT FURTHER RESOLVED, that, based on the above, the City of Lodi does hereby establish an advisory committee of the City Council consisting of two Council Members to investigate the toxic environmental contamination at and emanating from within the City of Lodi and report back to the City Council from time to time but no later than December 31, 1997. It is the intention of the City Council that this advisory committee will assess, among other things, the nature and source of any toxic contamination at and emanating from within the City of Lodi, investigate potential sources of releases of the contamination, investigate potential methods to finance the abatement, if needed, of said contamination, investigate the adequacy and sufficiency of enforcement schemes at the municipal, state and federal levels, investigate the adequacy and sufficiency of regulatory schemes at the municipal, state and federal levels, investigate the adequacy and sufficiency of liability schemes and financial responsibility requirements at the municipal, state, and federal levels, and assess the adequacy, sufficiency, and limitations of financial responsibility mechanisms, including without limitation, liability insurance and other mechanisms in the private and commercial sector of the community. [¶] . . . [¶]

"Now, THEREFORE, BE IT FURTHER RESOLVED, that, in order to assist the City Council in the conduct of its investigation, the advisory committee may, from time to time, recommend that the City Council issue subpoenas requiring attendance of witnesses or production of

recommend that the city council issue subpoenas requiring attendance of witnesses or production of documents pursuant to Government Code section 37104.

In May 1997 the city entered into a comprehensive cooperative agreement with the California Environmental Protection Agency, Department of Toxic Substances Control (DTSC), under which Lodi accepted "lead agency" status with responsibility to clean up the contamination by either (i) undertaking the work itself and seeking reimbursement from potentially responsible parties, or (ii) prosecuting actions against potentially responsible parties. That same month the city council, acting pursuant to resolution No. 97-09 and Government Code section 37104, issued subpoenas to the known liability insurers of three potentially liable parties—a printing business (Lustre-Cal Nameplate Corporation) and two dry cleaners (Guild Cleaners and Busy Bee Cleaners), seeking information about the existence, terms, and remaining limits of liability of any liability insurance policies that the responsible parties have had since they have been in business. The subpoenas served upon the insurers sought, for example, the insurance policies themselves, certificates of insurance, coverage cards, policy registers, claims files, and related documents. The subpoenas also sought applications for insurance, underwriting files, and correspondence between the insurer and the insured.

The insurers unsuccessfully challenged the subpoenas in the trial court, which upheld Lodi's authority to issue the subpoenas pursuant to Government Code section 37104 and limited its decision to that threshold matter. The court deferred for a later day specific claims of privacy, privilege, immunity, relevance, protection for proprietary information, etc., relating to particular responsive documents. The court also stayed enforcement of the subpoenas and invited the insurers to seek writ review of its threshold ruling.

The insurers filed two writ proceedings seeking to quash the subpoenas, and initially the Court of Appeal summarily denied relief. We thereafter granted the insurers' petitions for review and directed the Court of Appeal to vacate its summary denials and to issue orders to the trial court to show cause why the relief sought should not be granted. Thereafter, the Court of Appeal consolidated the matters and, in a divided opinion, granted relief to the insurers, on the ground that the insureds' interest in keeping private the

books or other documents for evidence or testimony in any action or proceeding pending before the City Council pursuant to California Government Code §37104."

subpoenaed documents outweighed the city's interest in disclosure of the documents. We granted review.[2]

## II.

### A.

■ The legislative subpoena power is broad. (*Watkins v. United States* (1957) 354 U.S. 178, 187 [77 S.Ct. 1173, 1179, 1 L.Ed.2d 1273] (*Watkins*).) As the United States Supreme Court observed in *McGrain v. Daugherty* (1927) 273 U.S. 135 [47 S.Ct. 319, 71 L.Ed. 580, 50 A.L.R. 1], the legislative "power of inquiry—with process to enforce it—is an essential and appropriate auxiliary to the legislative function." (*Id.*, at p. 174 [47 S.Ct. at p. 328]; see also *In re Battelle* (1929) 207 Cal. 227, 240 et seq. [277 P. 725, 65 A.L.R. 1497]; cf. *Dibb v. County of San Diego* (1994) 8 Cal.4th 1200, 1216-1218 [36 Cal.Rptr.2d 55, 884 P.2d 1003].)

■ Lodi's general authority to exercise broad police powers is set out in article XI, section 7 of the California Constitution.[3] The city's specific authority to issue subpoenas is set out in Government Code section 37104, which provides that a "legislative body may issue subpoenas requiring the attendance of witnesses or production of books or other documents for evidence or testimony in any action or proceeding pending before it." (See *id.*, § 34000 [defining "legislative body" to include a city council].)[4]

■ There are, of course, limits on the use of legislative subpoenas. We agree with the United States Supreme Court that issuance of such a subpoena is proper only if (i) it is authorized by ordinance or similar enactment, (ii) it serves a valid legislative purpose, and (iii) the witnesses or material subpoenaed are pertinent to the subject matter of the investigation. (*Wilkinson v.*

---

[2] The reply brief on behalf of Maryland Casualty Company et al. cites, in its statement of facts, numerous newspaper articles and other documents that are not part of the record in this case. Many of the cited articles refer to events that occurred after entry of the judgment under review, and in any event appear irrelevant to the issues before us. Rather than order this defective brief stricken (see Cal. Rules of Court, rule 18), we simply shall ignore all such references (*ibid.*).

[3] "A county or city may make and enforce within its limits all local police, sanitary, and other ordinances and regulations not in conflict with general laws." (Cal. Const., art. XI, § 7.)

[4] The answer brief of Connecticut Indemnity Company et al. asserts that "the City contends that its power to investigate is derived from the authority delegated to it by DTSC in the Cooperative Agreement in which the City has been designated 'lead enforcement agency with respect to the contamination at issue.' " Lodi's reply brief points out—as did the city to the same assertion by Connecticut Indemnity Company et al. in briefing before the Court of Appeal—that Lodi never has so contended, and instead repeatedly has asserted that the city council issued the challenged subpoenas pursuant to its own investigatory power under Government Code section 37104.

*United States* (1961) 365 U.S. 399, 408-409 [81 S.Ct. 567, 572-573, 5 L.Ed.2d 633]; cf. *Millan v. Restaurant Enterprise Group, Inc.* (1993) 14 Cal.App.4th 477, 480-481 [18 Cal.Rptr.2d 198] (*Millan*) [administrative subpoena].)

The insurers do not contest the first element, authorization, apparently because resolution No. 97-09 clearly establishes the necessary authority for the city council's investigation. The insurers assert, however, that the final two elements are not satisfied here.

1.

A legislative investigation cannot properly be an end in itself; it must be related to, and it must further, a legitimate purpose of the legislative body. (*Watkins, supra,* 354 U.S. at p. 187 [77 S.Ct. at p. 1179].) It long has been recognized that a legislative body may conduct an investigation in order to assist its decisionmaking regarding legislative or appropriative matters. (*Barenblatt v. United States* (1959) 360 U.S. 109, 111-112 [79 S.Ct. 1081, 1085, 3 L.Ed.2d 1115] (*Barenblatt*); see also *id.,* at p. 111 [79 S.Ct. at p. 1085] ["The scope of the power of inquiry . . . is as penetrating and far-reaching as the potential power to enact and appropriate . . . ."].)

The insurers repeatedly argue that the subpoenas further *solely* Lodi's interests in litigation, and that the city's asserted legislative interests are nothing more than a pretext and a sham.

█ We begin with the proposition that a court's authority to second-guess the legislative determinations of a legislative body is extremely limited. It is a "well-settled principle that the legislative branch is entitled to deference from the courts because of the constitutional separation of powers." (*Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 572 [38 Cal.Rptr.2d 139, 888 P.2d 1268].) It also is hornbook law that courts are not authorized to second-guess the motives of a legislative body and that, if reasonable, legislation will not be disturbed. (*Lockard v. City of Los Angeles* (1949) 33 Cal.2d 453, 462 [202 P.2d 38, 7 A.L.R.2d 990].)

█ The various purposes of the legislative investigation set out in resolution No. 97-09 are facially legitimate ones, e.g., to investigate (i) the adequacy of "existing legislative environmental schemes," and (ii) potential methods to finance the abatement. The subject matter of the investigation, an environmental public nuisance amounting to, as the trial court put it, "a tremendous and serious groundwater contamination problem" within Lodi's city limits, obviously is an area over which the city council has authority and responsibility both to legislate and to appropriate.

In this regard, the city seeks to learn through its subpoenas, for example, whether and to what extent it might need to raise taxes, or undertake other similar funding options, or redirect money from other existing programs, or litigate, in order to address the contamination of its groundwater. These obviously are matters that the city council properly may consider, and to enable it to make such legislative and appropriative judgments, the city has a legitimate interest in learning whether and to what extent other potentially responsible parties might be available to contribute to the cleanup through, for example, their liability carriers. The city reasonably could determine that it would be imprudent for it to legislate and appropriate for such cleanup expenditures without first surveying the situation in an effort to minimize its own expenditures and/or its need to raise or redirect public funds. Because, as Lodi observes, "[i]t has choices and responsibilities that other [i.e., nongovernmental] litigants do not have," it is appropriate for the city to have at its disposal a means of gathering needed information so that it properly may discharge its governmental obligations to the present and future citizens of Lodi.

As has been observed, " '[i]t is difficult to imagine any interest that [a legislative entity] could have that would be more compelling . . . than its interest in determining the availability of funds for the cleanup of hazardous substances located within its boundaries.' " (*Ford Motor Co. v. Insurance Co. of North America* (1995) 35 Cal.App.4th 604, 613 [41 Cal.Rptr.2d 342].) We find Lodi's asserted legislative interests to be legitimate, and not mere pretext or sham.

It is, of course, possible (the insurers assert, inevitable) that the city also may put some of the information it seeks to a second use, namely in future litigation against the insureds. The question is whether, as the majority of the Court of Appeal concluded, this additional potential use of the information renders the issuance of the subpoenas invalid.[5]

We may assume, as did the United States Supreme Court in *Sinclair v. United States* (1929) 279 U.S. 263 [49 S.Ct. 268, 73 L.Ed. 692] (*Sinclair*), reversed on other grounds in *United States v. Guadin* (1995) 515 U.S. 506, 519-522 [115 S.Ct. 2310, 2318-2320, 132 L.Ed.2d 444], that the Lodi City Council lacks "authority to compel disclosures [through issuance of legislative subpoenas] *for the purpose of aiding the prosecution of pending suits.*"

---

[5]Lodi asserts that much, if not all, of the information sought is routinely available to any litigant once litigation is commenced (Code Civ. Proc., § 2017, subd. (b); Fed. Rules Civ.Proc., rule 26(a)(1)(D) [28 U.S.C.]), and that such information also is routinely available prior to commencement of litigation to a wide variety of federal and state environmental regulatory agencies. (E.g., 42 U.S.C. § 9604(e).)

(*Sinclair, supra,* 279 U.S. at p. 295 [49 S.Ct. at p. 272], italics added.) Nonetheless, as the high court also observed in *Sinclair,* the city's "*authority . . . to require pertinent disclosures in aid of its own constitutional power is not abridged because the information sought to be elicited may also be of use in such suits.*" (*Ibid.,* italics added.)

We conclude, consistent with *Sinclair, supra,* 279 U.S. 263, that when a city's issuance of a subpoena is, in itself, a proper exercise of legislative power, the potential that the city also may use information gained by that subpoena in future litigation does not render the subpoena invalid.

Amicus curiae on behalf of the insurers asserts that if a city's need for information is, as a general matter, justified by its legitimate interest in becoming informed before making appropriative decisions, such subpoenas might potentially be issued in "every dispute pitting the local government against other individuals—whether contractors, accident victims, or plaintiffs in land use cases." Amicus curiae argues that "[i]n all [such] cases . . . , the locality will be able to offer the same overbroad justification for pre-litigation discovery offered here: that the government needs the information to determine the extent of its financial exposure." These concerns are misplaced. First, as the high court made clear in *Barenblatt, supra,* 360 U.S. 109, 111-112 [79 S.Ct. 1081, 1085], as a general matter a legislative body may use its investigative powers to inform its appropriative decisions. Second, here we assess the city's interest in the context of its effort to address complex funding and lawmaking decisions in order to respond to a continuing threat to the local environment and public health, safety, and welfare. These considerations are unlikely to arise in most of the routine disputes "pitting the local government against other individuals" listed by amicus curiae, and hence will not be available to justify legislative subpoenas with regard to such matters.

In concluding that Lodi had no valid legislative purpose supporting the issuance of its subpoenas, the majority in the Court of Appeal below appears to have discredited the city's stated legislative purposes, and divined instead the city's "true" and sole purpose, which the majority understood to be an effort to gain an advantage in prospective litigation against the insureds. As noted above, it is well established that courts generally do not engage in such second-guessing of legislative motive, and we do not find any legitimate basis upon which to conclude that Lodi's action fails to advance the legitimate legislative functions of appropriation and lawmaking.

## 2.

The specific inquiries set out in the subpoenas must be pertinent to the subject matter of the investigation. (*Wilkinson v. United States, supra,* 365

U.S. 399, 413 [81 S.Ct. 567, 575]; *Millan, supra,* 14 Cal.App.4th at p. 481 ["documents demanded must be relevant and ' "adequate, but not excessive, for the purposes of the relevant inquiry" ' " (italics omitted)]; *Ashland Oil, Inc. v. F. T. C.* (D.C. Cir. 1976) 409 F.Supp. 297, 305 ["[I]n deciding the [question of] pertinency, the specific inquiries need only be reasonably related to the major subject matter area under investigation."].)

The insurers assert that the subpoenas "sweep more broadly than would be necessary for any conceivable legislative investigation," and claim that "[i]nformation regarding reinsurance, insurance applications, and the manner in which [the insurers] calculated the rates and premiums of the policies are entirely irrelevant" to the city's legislative functions of appropriation and lawmaking. Lodi asserts in response that the sources of information that are sought often contain references to either preexisting or excess liability insurance policies for insureds or related insureds, and hence can assist the city in discovering other policies of which it otherwise might be unaware.

We conclude that the subpoenas are pertinent to the city's legitimate legislative interests. Contentions concerning relevance or overbreadth of these or other particular demands can and no doubt will be resolved at subsequent proceedings before the trial court.

### B.

It follows that the subpoenas issued in relation to Lodi's investigation are valid. The insurers' additional contentions (and those of amicus curiae on their behalf) do not persuade us otherwise.

### 1.

The insurers assert that the subpoenas violate the constitutional and statutory privacy rights of their insureds, some of whom are corporate entities. Assuming without deciding that the insureds that are corporate entities have such rights (but see, e.g., *Roberts v. Gulf Oil Corp.* (1983) 147 Cal.App.3d 770, 791-793 [195 Cal.Rptr. 393] [corporate entities have no privacy rights under art. I, § 1 of the Cal. Const.]), and similarly assuming that the *insurers* have standing to assert the rights of their insureds in this context, we nevertheless conclude that the trial court's ruling upholding the general validity of the subpoenas cannot be reversed on these grounds, because, as the insurers conceded in documents appended to their writ petitions, the trial court has not yet ruled on specific privacy claims and related claims.

As noted above, the trial court confined its decision to addressing Lodi's general authority to employ subpoenas issued pursuant to Government Code

section 37104 to obtain the requested insurance history information, and the trial court deferred until a later date particular claims of privacy, privilege, and the like.[6] The privacy issue is not properly before us now.[7]

### 2.

The insurers also assert that the Insurance Information and Privacy Protection Act, Insurance Code section 791 et seq., prevents them from complying with the subpoenas. Initially, we note that some of the requested information (such as the insurers' document retention policies) appears not to be the kind of private or personal information protected by the act, and hence disclosure of that information would not violate the act. Nor does the act bar disclosure of the other allegedly personal or privileged information here at issue. The act contains two exceptions, one or both of which apply in the present case: the act permits disclosure by insurers (and without any notice to, or consent by, the insured) of "personal" and "privileged" information concerning insureds (Ins. Code, § 791.02, subds. (s) & (v) [definitions]), so long as the information is sought by any "governmental authority pursuant to law" (*id.*, § 791.13, subd. (f)), or when the disclosure is "[o]therwise permitted or required by law." (*Id.*, subd. (g).) Here, as a "governmental authority," the Lodi City Council issued its subpoenas "pursuant to law" (Gov. Code, § 37104), and disclosure is "required by" that same law.[8]

### 3.

The insurers state that "a subpoena, which is inappropriate in any respect, may not be enforced." Although, as Lodi observes, this assertion is plainly

[6]Indeed, there is no factual basis in the record upon which to rule on any privacy claim. Nowhere is there any indication that the insurers ever have identified, in a "privilege log" or otherwise, the subpoenaed documents that they seek to withhold based upon a claim of privacy, nor have they identified any demands that are objectionable on that ground.

[7]In concluding otherwise, the Court of Appeal majority raised the concern that Lodi, "as a prospective litigant, would be in the position of ruling on its own authority . . . on privilege claims, with its prospective adversaries subject to its rulings and potential consequent punishment. The determination of such matters by a prospective litigant implicates due process concerns." The Court of Appeal's concerns are unfounded. No city or county has the authority finally to determine and enforce such subpoenas—only a trial court can so act. (See *Dibb v. County of San Diego, supra,* 8 Cal.4th 1200, 1217-1218; Evid. Code § 914, subd. (b) ["No person may be held in contempt for failure to disclose information claimed to be privileged unless he had failed to comply with an order of a court."].)

In a similar vein, we observe that Lodi repeatedly has stressed that it "is not opposed to entering into appropriate agreements to protect confidential personal information, trade secrets, and the like."

[8]As Lodi observes, "[e]ssentially, the resolution of the subpoena validity issue, resolves this issue as well; if the subpoenas are valid, then the disclosures are 'pursuant to' and 'required by law,' and vice versa."

overbroad, even so, as noted above, it would provide no basis upon which to reverse the trial court's judgment in the present case, because at this juncture in the proceedings no part of the subpoenas has been adjudged "inappropriate in any respect."

### 4.

Amicus curiae on behalf of the insurers asserts that Lodi has no power to "evade" or "exempt itself from generally applicable statewide court rules and procedures" governing pretrial discovery. We agree. Here, however, we are concerned with subpoenas issued in connection with legislative, not judicial, proceedings. The rules and procedures pertaining to *judicial* proceedings simply do not apply; the sole question before us is whether the subpoenas constitute a valid exercise of *legislative* power.

### 5.

Amicus curiae on behalf of the insurers next asserts that our failure to quash Lodi's subpoenas would render any subsequent litigation "fundamentally unfair" to the insurers. We are not persuaded. It appears that (i) the city would be entitled to issue subpoenas *seeking* much of the same information during pretrial discovery (see Code Civ. Proc., § 2017, subd. (b)), and (ii) the insurers are free to conduct (and apparently have conducted) their own prelitigation investigation through the Public Records Act (Gov. Code, § 6250 et seq.) and through requests for information from their own insureds. In this setting, and at this juncture, we cannot say that Lodi's subpoenas would render any subsequent litigation "fundamentally unfair" to the insurers.[9]

### 6.

Finally, the insurers assert in conclusory fashion that the issuance of Lodi's subpoenas violates their due process rights, the takings clause, and the right to be free from unreasonable searches and seizures. Justice Davis's dissenting opinion below correctly rejected these undeveloped claims.

---

[9] In a somewhat related argument, amicus curiae on behalf of the insurers asserts that Lodi's subpoenas are unduly burdensome and are designed to coerce improvident settlements. As noted above, the subpoenas ultimately are subject to court review (*Dibb v. County of San Diego, supra,* 8 Cal.4th 1200, 1217-1218; Evid. Code, § 914; Gov. Code, §§ 37106-37109), and a court will determine whether any aspects of the subpoenas are overbroad and insufficiently related to a legitimate legislative purpose.

## III.

The judgment of the Court of Appeal is reversed.

Mosk, J., Baxter, J., Werdegar, J., Chin, J., and Brown, J., concurred.

**KENNARD, J.,** Concurring.—The majority holds that under the facts established in this case, a city council acted within its legislative authority when it issued subpoenas to insurance companies requiring them to disclose information about the liability insurance coverage of individuals and businesses that were potentially responsible for local groundwater pollution. I agree.

The majority identifies three requirements for a valid legislative subpoena: (1) the subpoena has been authorized by ordinance or similar enactment; (2) the information sought is pertinent to a legislative investigation; and (3) the subpoena serves a valid legislative purpose. Again, I agree.

Regarding the third of these requirements, the majority assumes that a subpoena has a valid legislative purpose only if the information sought will be useful for some purpose other than litigation. The majority concedes that liability coverage information will be useful to the city in litigation that the city contemplates bringing against the individuals and businesses potentially responsible for the groundwater pollution. But the majority claims to find another, *nonlitigation* purpose for the subpoenas based on the city's need to make appropriations and engage in sound fiscal planning. The majority considers this "appropriative purpose" to be a nonlitigation purpose and as such to be a valid legislative purpose. I find this reasoning strained and unpersuasive.

First, the majority does not persuade me that it is necessary to assume that a city council's authority to issue legislative subpoenas is or should be limited to subpoenas issued for nonlitigation purposes. What is the source of this supposed limitation? Does the majority derive it from a statute, the common law, or the state or federal Constitution? The majority does not say. The majority cites no decision by any court striking down a legislative subpoena on the basis that the information sought was useful only for litigation. The majority relies entirely on a decision of the United States Supreme Court *declining* to strike down a legislative subpoena on the ground that the information obtained might be useful in aiding the prosecution of pending suits. (*Sinclair v. United States* (1929) 279 U.S. 263, 295 [49 S.Ct. 268, 272, 73 L.Ed. 692], revd. on other grounds in *United States v. Gaudin* (1995) 515 U.S. 506, 519-522 [115 S.Ct. 2310, 2318-2320, 132 L.Ed.2d

444].) Because the high court found that the subpoena at issue there served both litigation and nonlitigation purposes, it did not have occasion then, nor has it had occasion during the ensuing 70 years, to decide whether Congress must have a nonlitigation purpose for a legislative subpoena.

Second, I do not agree with the majority that the city council had a purpose separate and apart from litigation for issuing the challenged subpoenas, which sought information about liability insurance coverage. By its nature, liability insurance is useful only in the event of litigation. Because liability coverage is contingent on litigation, information about liability coverage has no utility except in relation to pending or contemplated litigation. The city has virtually conceded the point. In a brief it filed in this court, the city admitted that it wants the liability coverage information "to determine whether to devote some of the City's limited resources to litigation, as opposed to other means for raising funds." Any party who contemplates bringing an action for damages would reason in the same way: To make appropriate financial plans, it is very helpful to know what liability insurance the potential defendants have. This information is useful to decide whether to litigate, to budget for the litigation itself, and to plan for other revenue sources if the liability coverage is inadequate. Thus, under the facts shown here, the majority's distinction between an appropriative purpose and a litigation purpose is illusory.

The distinction is not only illusory, it is also unnecessary. If contemplated litigation is itself a matter appropriately within the purview of the city council, then a litigation purpose is a valid legislative purpose. Here, the city council has responsibility for ensuring the safety of the groundwater that city residents use for their drinking water and for other domestic needs. To discharge that responsibility, the city council is contemplating litigation against potentially responsible parties, and for purposes of this contemplated litigation it would be useful for the city council to know what liability coverage is available to the potentially responsible parties. This is sufficient, in my view, to demonstrate a valid legislative purpose.

This is not to say, however, that there are no limits on what information the city council can demand by means of a legislative subpoena under these circumstances. It would be fundamentally unfair to permit the city council to use the legislative subpoena to obtain information that no other prospective litigant could hope to discover. But liability coverage has long been discoverable. A plaintiff who has brought an action for money damages may discover information about liability insurance coverage available to satisfy a judgment, even though this information is not relevant to any issue to be

litigated in the action against the insured. Code of Civil Procedure section 2017, subdivision (b) provides: "A party may obtain discovery of the existence and contents of any agreement under which any insurance carrier may be liable to satisfy in whole or in part a judgment that may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment. This discovery may include the identity of the carrier and the nature and limits of the coverage. A party may also obtain discovery as to whether that insurance carrier is disputing the agreement's coverage of the claim involved in the action, but not as to the nature and substance of that dispute. . . ." (See *Irvington-Moore, Inc. v. Superior Court* (1993) 14 Cal.App.4th 733 [18 Cal.Rptr.2d 49] [discussing the history and scope of this provision].)

Even before this provision was enacted, parties could get much the same information by bringing a motion to perpetuate testimony under former sections 2083 to 2089 of the Code of Civil Procedure (repealed Stats. 1957, ch. 1904 § 1, p. 3321; see now Code Civ. Proc., § 2035, as amended by Stats. 1987, ch. 86, § 18, p. 353). When construing those provisions, this court rejected arguments that allowing discovery of liability insurance coverage before liability is established was an invalid search and seizure or gave the plaintiff an unfair advantage in settlement negotiations. (*Superior Ins. Co. v. Superior Court* (1951) 37 Cal.2d 749, 754-755 [235 P.2d 833].)

To obtain discovery of liability coverage information, therefore, a party generally must either commence the action for damages or bring a motion to perpetuate testimony. One Court of Appeal has given this explanation: "Formally taking a step toward litigation, such as filing a petition to perpetuate testimony or filing a lawsuit indicates there is a serious problem. Such conduct assures that the third party claimant has no ulterior purpose, such as snooping for information. [Citation.] It protects the privacy of insureds from the curious who may only wish to bring nuisance claims. By controlling the timing of the release of information we protect the premature release of confidential data." (*Griffith v. State Farm Mut. Auto. Ins. Co.* (1991) 230 Cal.App.3d 59, 70 [281 Cal.Rptr. 165].)

None of the identified reasons for prohibiting prelitigation discovery of liability insurance apply here. The city council is not merely curious, nor can the actions it contemplates bringing be characterized as nuisance claims, and the record amply establishes that the existing groundwater pollution is a "serious problem." Moreover, a state agency, the Department of Toxic Substances Control, has identified the parties who are potentially responsible for the pollution. Accordingly, there is no reason to prohibit the city council

from discovering liability insurance information at the prelitigation stage. Presumably the city council could obtain this information either by a motion to perpetuate testimony under Code of Civil Procedure section 2035 or by use of the legislative subpoena. Of course, the city council should not be permitted to obtain more information by its legislative subpoena than it could obtain by a petition to perpetuate or, after filing suit, by using normal litigation discovery procedures. But, as the majority explains, the trial court on remand will determine specifically which information is properly discoverable through the legislative subpoenas.