[Civ. No. 62273. Second Dist., Div. Four. Sept. 30, 1981.]

ROBERT GORE RIFKIND, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
GOGI GRANT RIFKIND, Real Party in Interest.

**COUNSEL**

Belcher, Henzie, Biegenzahn, Chertok & Walker and William I. Chertok for Petitioner.

No appearance for Respondent.

Silver & Lazar, Rubin M. Lazar and Arthur E. Schwimmer for Real Party in Interest.

**OPINION**

**FILES, P. J.**—This original proceeding was brought here to review an order of the superior court made in a marriage dissolution proceeding, requiring petitioner (Husband) to produce documents and records which he says are irrelevant and privileged or confidential.

Husband is the president of an incorporated law firm of 28 lawyers, of whom 14 are shareholders. After the parties found themselves in disagreement as to what papers Wife's attorneys and accountant needed to see for the purpose of ascertaining Husband's wealth, Wife filed a request for production of documents. Husband consented to inspection and copying of some documents, but objected in whole or in part to other requests.

A hearing was held, after which the superior court made two orders requiring Husband to produce documents for inspection and copying, one a formal order filed April 8, 1981, and the second a minute order on April 27.

The superior court's orders embrace a great deal of material which Husband has produced or has agreed to produce. The financial reports of the law corporation through 1979 were produced prior to the hearing, and the 1980 reports were promised when ready. Husband's attorney has stated in the superior court, and here, that Husband is willing to produce further documents which relate to his earnings, pension contributions and obligations. Husband's objections which are argued here have to do with two general categories: One is the income tax returns of the law corporation and of three partnerships. The other is the records of the compensation, pensions, profit sharing plans and obligations of the other shareholders of the law corporation.

*Income tax returns.*

■ Request number seven calls for income tax returns, federal and state, of three named partnerships, for the calendar years 1975 to date. We understand that each of these partnerships is engaged in investments, rather than the practice of law, and that Husband is a member of each. Request number nine calls for all income tax returns of the present law corporation and its predecessors from 1973 through 1980. Disclosure of these papers is required by the April 27 minute order.

Ever since *Webb* v. *Standard Oil Co.* (1957) 49 Cal.2d 509 [319 P.2d 621], it has been the law of California that the disclosure of the contents of an income tax return may not be coerced for the benefit of a private litigant. The purpose of this rule is "to facilitate tax enforcement by encouraging a taxpayer to make full and truthful declarations in his return, without fear that his statements will be revealed or used

against him for other purposes." (*Webb* at p. 513.) The continuing vitality of the *Webb* rule has been confirmed in *Crest Catering Co.* v. *Superior Court* (1965) 62 Cal.2d 274 [42 Cal.Rptr. 110, 398 P.2d 150], *In re Marriage of Brown* (1979) 99 Cal.App.3d 702 [160 Cal.Rptr. 524] and *In re Marriage of Sammut* (1980) 103 Cal.App.3d 557 [163 Cal.Rptr. 193].

The *Webb* rule is not a prohibition against disclosure as such, but an immunity from coerced disclosure. Thus the taxpayer is free to disseminate copies of his tax return, or disclose its contents, as far as he sees fit to do so. The rule exists not for the benefit of the taxpayer, but because it benefits the tax collector to give the taxpayer immunity from coercion.

Wife's attorney can find no assistance from the fact that the tax returns in question are those of a corporation and some partnerships, and that Husband, who is president of the corporation, has possession of the taxpayers' copies of these returns. Necessarily some individual will have possession of or access to the tax returns prepared on behalf of a corporation or partnership. The *Webb* doctrine could not exist with respect to a partnership or corporation return if the immunity did not apply to those individuals who hold the documents for the reporting entity.

Nor is the Wife entitled to coerce disclosure of the corporation and partnership tax returns upon the ground that she is married to the man who has possession of the returns. In the trial court Wife's attorney argued: "He [husband] received those documents, we contend, as a fiduciary on behalf of the community." If that reasoning were valid, no married person could be entrusted with any confidential information without making both spouses privy to the secret.

It is important to keep in mind that although a married person's stock in a corporation may be community property, knowledge of confidential corporate affairs is not necessarily to be shared with the spouse. And although an interest in a partnership may be community property, the spouse of a partner has no community interest in the partnership property. (Corp. Code, § 15025, subd. (2)(e).)

Insofar as the trial court's order required the disclosure of tax returns of the law corporation and the three partnerships, it must be set aside.

*Investigation of other attorneys.*

█ Subparagraphs 2 (a), 2 (b) and 2 (c) of the April 8 order require production of the following records for the period from January 1, 1974, to date:

Payroll journals and individual compensation cards, records or ledgers for all employees of the law corporation reflecting salaries, earnings, compensation or other moneys or benefits paid to all such employees who were shareholders of the corporation during that period;

Schedule of pension and profit sharing plan contributions made by the law corporation for each shareholder.

Work papers, analyses or other such ledgers, books, records or documents reflecting notes, obligations or other liabilities from shareholders and from "related parties," defined as spouses and other members of the families of shareholders.

Husband has agreed to produce all such records which relate to him. Husband has also agreed to produce the stock book and other records which will reflect all transfers of the corporation stock, and the consideration given for each, which Wife requested for the purpose of discovering the value of the shares. The objection is to the production of corporate records which relate only to other shareholders and their families.

The records in these three categories have no apparent relevance to any of the issues to be resolved in this matrimonial proceeding. Nor has there been any showing that such documents will lead to the discovery of relevant information. The only apparent effect of the production of these three categories would be to invade the privacy of some 14 attorneys and their families who have no part in the pending matrimonial dispute.

A constitutional amendment adopted in 1974 elevated the right of privacy to an "inalienable right" expressly protected by force of a constitutional mandate. (Cal. Const., art. I, § 1.) When the interest of a private litigant in discovering relevant facts conflicts with the right of others to maintain reasonable privacy regarding their financial affairs, a court must "indulge in a careful balancing" before ordering disclosure. (See *Valley Bank of Nevada* v. *Superior Court* (1975) 15 Cal.3d

652, 657 [125 Cal.Rptr. 553, 542 P.2d 977].) It follows that a court must not generously order disclosure of the private financial affairs of nonparties without a careful scrutiny of the real needs of the litigant who seeks discovery. It does not appear that any such balancing process occurred in the proceeding which is here under review.

Wife's attorneys seek to justify the order upon the ground that they need to determine the goodwill of Husband's law practice. Wife has already received, or been promised, full disclosure of the assets and income of the law corporation itself, the benefits received by the Husband and the details of all transactions to which he has been a party. Even if the compensation and other benefits of the other attorney shareholders are relevant to the goodwill evaluation, there is no showing that they are of any great importance.

Wife's attorneys in this court suggest that "it is important to discover ... whether Husband has arranged for the corporation to pay other friendly shareholders amounts in excess of their normal salaries and for them to then pay or lend the money to husband ...."

It is, of course, possible for almost any person to arrange for some of his income or property to be diverted to someone else for the purpose of concealing his ownership. It is also possible for a party to demand the disclosure of irrelevant private records for the purpose of annoying the opposing party and coercing a settlement. But courts do not ordinarily impute either of such reprehensible tactics to a litigant without some indication of it on the record. We do not assume that either party to this matrimonial controversy has employed improper tactics. The trial court should examine with reasonable skepticism any alleged excesses of either party, with a view to giving the demanding party what is necessary, and no more.

There is an additional factor which should be considered. Husband raised in the trial court two issues which might properly be resolved before allowing discovery to go to extremes. One is Husband's claim that a marital agreement between the parties, if valid, will dispose of the community property issues. The other unknown has to do with fixing a date at which the property is to be valued, the parties having been separated some eight years prior to the orders here under review.

During the early years following the enactment of California's 1957 discovery statute, courts operated generally upon the assumption that

all-out discovery at the earliest time was the highest good. But experience through the years has exposed the unnecessary hardship and expense which have become the all too common consequences of unregulated discovery. The adoption of the constitutional right of privacy emphasizes the duty of the courts to protect both parties and nonparties against unnecessary intrusion into matters which people ordinarily consider to be private. (See *Valley Bank of Nevada* v. *Superior Court, supra,* 15 Cal.3d 652, 656; *Richards* v. *Superior Court* (1978) 86 Cal.App.3d 265 [150 Cal.Rptr. 77]; *Board of Medical Quality Assurance* v. *Gherardini* (1979) 93 Cal.App.3d 669, 680-682 [156 Cal.Rptr. 55]; *Craig* v. *Municipal Court* (1979) 100 Cal.App.3d 69, 76-79 [161 Cal.Rptr. 19]; *Willis* v. *Superior Court* (1980) 112 Cal.App.3d 277, 295-298 [169 Cal.Rptr. 301].)

In the matrimonial action which is under review here, the trial court should carefully consider whether disclosure of the financial dealings of nonparties, even if shown to be relevant, may not better be deferred until the court has resolved other issues which might make the disclosure unnecessary.

Let a writ of mandate issue ordering the respondent court to vacate its order of April 27, 1981, and strike paragraphs 2 (a), 2 (b), and 2 (c) from its order of April 8, 1981, without prejudice to such further order for production of documents as the court may find to be consistent with the principles set forth in this opinion.

Kingsley, J., and Woods, J., concurred.

A petition for a rehearing was denied October 19, 1981, and the petition of real party in interest for a hearing by the Supreme Court was denied December 30, 1981.