[No. AO24525. First Dist., Div. Three. Jan. 31, 1984.]

DAVID JAMES ALLEN, Petitioner, v.
THE SUPERIOR COURT OF CONTRA COSTA COUNTY, Respondent;
ASSUNTA SIERRA, Real Party in Interest.

**COUNSEL**

William H. Staples, Marsha L. Stephenson, Capps, Staples, Ward, Hastings & Dodson, Robert R. Poindexter and Ogden, Poindexter & Voelke for Petitioners.

No appearance for Respondent.

Stanley K. Dodson and Sanders, Dodson, Rives & McLaughlin for Real Party in Interest.

Robert E. Cartwright, Leonard Sacks, Wylie A. Aitken, Glen T. Bashore, Ray Bourhis, Richard D. Bridgman, Edwin Train Caldwell, David S. Casey, Jr., Douglas K. deVries, H. Greig Fowler, Sanford M. Gage, Ian Herzog, G. Dana Hobart, Stanley K. Jacobs, Harvey R. Levine, John C. McCarthy, Timothy W. Peach, Joseph Posner, John M. Van Dyke, Arne Werchick, Stephen I. Zetterberg, Fischer & Hill, Dennis A. Fischer and Melissa Hill as Amici Curiae on behalf of Respondent and Real Party in Interest.

## OPINION

**SCOTT, J.**—This petition for writ of mandate seeks to protect a defense medical expert from producing documents showing the extent of his practice for the defense and for insurance companies over the past five years. The doctor has not yet been deposed, but his records were subpoenaed for production at his deposition. We conclude that the trial court erred in requiring document production without a showing that plaintiff's object could not be accomplished through less intrusive means.

Real party in interest Assunta Sierra has sued petitioner for injuries sustained in an automobile accident (a second plaintiff had also sued, but her action has settled and will not be mentioned hereinafter). By stipulation of the parties, at petitioner's request, real party Sierra was examined by Dr. Robert L. Samilson. Afterwards, real party noticed the deposition of Dr. Samilson and served him with a subpoena duces tecum requiring him to bring (1) records pertaining to his examination of real party and billing for the examination; (2) records indicating the sources of his income where examinations were made at the request of insurance companies or defense lawyers over the last five years; (3) records of any kind that would reveal what portion of his total income was from treatment of patients, as opposed to evaluation of persons for the defense during the last five years; (4) records related to prior depositions in cases over the past five years when he was asked by the defense to examine someone; (5) all reports of examinations and evaluations prepared at defense request over the past five years.

Petitioner moved the trial court for a protective order that Dr. Samilson be required to bring only documents related to his examination of real party. In a declaration in support of the motion, defense counsel stated that Dr. Samilson had advised him that his records were kept under patient name

and that he would have to examine all his patient records in order to comply with the subpoena. He further advised defense counsel that rather than comply with the subpoena he would withdraw as a medical expert.

Real party opposed the protective order, contending that the records were required to show bias, prejudice and unfairness on the part of an expert witness who consistently and frequently testifies for the defense. Real party submitted evidence that on some 70 occasions since 1977 Dr. Samilson had testified for the defense and that that number exceeded the frequency of testimony by five other listed doctors who were asserted to be "well known to attorneys who practice personal injury law and to trial judges."

After hearing, the trial court denied the protective order as to all items except the reports of examinations and evaluations prepared at defense request over the past five years (item No. 5, above). As to the four remaining items, the court ordered that names of patients and examinees need not be disclosed. Petitioner sought reconsideration of the decision and submitted a declaration by Dr. Samilson stating that he sees approximately 1,500 new patients every year and reiterating both that his files are not arranged for easy search and that he would withdraw rather than produce the records. He also stated that he strongly objected to the inquiry into his private financial records. The court denied reconsideration. This petition followed.[1]

Petitioner argues that Evidence Code section 722, subdivision (b), which permits an adverse party to ask an expert witness about compensation and expenses paid or to be paid for his testimony, impliedly states the outer limit on any inquiry into an expert witness' medical practice and finances. He argues that the trial court order has permitted an invasion of Dr. Samilson's right of privacy, protected by article I, section 1 of the California Constitution. He cites several decisions which support limitations on disclosure of personal financial information. (See, e.g., *Richards* v. *Superior Court* (1978) 86 Cal.App.3d 265 [150 Cal.Rptr. 77]; *Dompeling* v. *Superior Court* (1981) 117 Cal.App.3d 798 [173 Cal.Rptr. 38]; *Rifkind* v. *Superior Court* (1981) 123 Cal.App.3d 1045 [177 Cal.Rptr. 82]; *Moskowitz* v. *Superior Court* (1982) 137 Cal.App.3d 313 [187 Cal.Rptr. 4].) He notes that real party already has at his/her disposal several publications which index the testimony of any medical expert. He asserts that real party may use that evidence to show any bias or prejudice.

■ Evidence Code section 722, subdivision (b), provides: "The compensation and expenses paid or to be paid to an expert witness by the party

---

[1]The California Trial Lawyers Association has filed an amicus curiae brief in support of the trial court.

calling him is a proper subject of inquiry by any adverse party as relevant to the credibility of the witness and the weight of his testimony." Petitioner contends that the Legislature's failure to create a more expansive rule for impeachment of an expert must be read as limiting inquiry to payments for the case at hand.

Real party responds by pointing to other Evidence Code sections: (1) " 'Except as otherwise provided by statute, *all* relevant evidence is admissible.' *Evidence Code Section 351.* (Italics added.)" (2) " 'Relevant evidence' means evidence, *including evidence relevant to the credibility of a witness* or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action.' *Evidence Code Section 210.* (Italics added.)" (3) "Evidence Code Section 721(a) provides in relevant part '. . . a witness testifying as an expert may be cross-examined to the same extent as any other witness. . . .' " (4) "Section 780 of the Evidence Code provides in relevant part: '*Except as otherwise provided by statute,* the court or jury may consider in determining the credibility of a witness *any matter* that has any tendency in reason to prove or disprove the truthfulness of his testimony at the hearing, including but not limited to any of the following: (Italics added.) . . . (f) The existence or nonexistence of a bias, interest or other motive.' "

These general rules of evidence prevail over the inference petitioner seeks to draw from the silence of Evidence Code section 722, subdivision (b). The mere fact that that section did not mention other kinds of impeachment evidence does not make such evidence inadmissible at trial.

The comments of the Law Revision Commission, printed with Evidence Code section 722, reveal that prior to its adoption there was some uncertainty in the law because *People* v. *Tomalty* (1910) 14 Cal.App. 224, 235 [111 P. 513], held that, though an expert could be asked if he was being compensated, he could not be asked the amount of the compensation. Although one purpose of section 722, subdivision (b), was to clear up that uncertainty, there is no reason to suspect a further purpose of restricting other proper impeachment. The Law Revision Commission commented that the rule of section 722 was a desirable rule because of "[t]he tendency of some experts to become advocates for the party employing them." Just as payment in the instant case is some evidence of advocacy, so too would be evidence that the particular expert usually or always testifies for one side of a particular class of lawsuit. Nothing in the Evidence Code suggests that such advocacy *may be proven only by evidence of payment in the instant case.*

■ Petitioner's attack here is not upon questions asked at a deposition or at trial, but upon a subpoena duces tecum and the burden it places upon

Dr. Samilson.[2] We must consider whether the trial court properly weighed the burden on Dr. Samilson and assured itself that the need for that means of discovery justified the burden.

At least three different code sections, all cited by petitioner below, authorize a trial court to protect a party or witness from abusive discovery. (See Code Civ. Proc., §§ 1987.1, 2019, subd. (b)(1), and 2037.8.) Section 2019, subdivision (b) (1), the longest-established of the three, provides, in part: "Upon motion seasonably made by any party . . . the court . . . may make an order . . . that the scope of the examination shall be limited to certain matters, books, documents, or other things, . . . or the court may make any other order which justice requires to protect the party or witness from annoyance, embarrassment, or oppression." The terms "annoyance, embarrassment, or oppression" have been described as "deliberately vague," and California law interpreting them has been said to be "surprisingly sparse." (2 Hogan, Modern Cal. Discovery 3d (1981) § 7.08, p. 26.)

The cases cited by petitioner are not controlling. The protective orders sought in *Richards* v. *Superior Court, supra,* 86 Cal.App.3d 265, and *Moskowitz* v. *Superior Court, supra,* 137 Cal.App.3d 313, did not prevent disclosure; they merely limited disclosure to those involved in the lawsuit and prevented them from using the information for purposes outside the lawsuit. In neither *Dompeling* v. *Superior Court, supra,* 117 Cal.App.3d 798, nor *Rifkind* v. *Superior Court, supra,* 123 Cal.App.3d 1045, was the information sought more than marginally relevant. However, *Rifkind* and *Dompeling* both state important principles to apply in considering disclosure of financial information.

*Dompeling* v. *Superior Court, supra,* 117 Cal.App.3d 798, 808-809, explained that "[w]here objection is made to discovery of [personal financial] information in the trial court, the court must carefully weigh the competing factors in fashioning an order, considering: '. . . the purpose of the information sought, the effect that disclosure will have on the parties and on the trial, the nature of the objections urged by the party resisting disclosure, and ability of the court to make an alternative order which may grant partial disclosure, disclosure in another form, or disclosure only in the event that the party seeking the information undertakes certain specific burdens which appear just under the circumstances. . . .' "

---

[2] In his request for a protective order below, petitioner sought a ruling not only protecting Dr. Samilson from production of documents, but also declaring that he need not disclose or discuss any of the factual matter contained in his documents. At oral argument, however, petitioner conceded that Dr. Samilson could be asked at deposition or trial about the amount of defense practice performed and the relationship between treating patients and examining persons for insurance companies and the defense. Thus, the issue here is production of documents, not questioning of the doctor.

In a similar vein, *Rifkind* v. *Superior Court, supra,* 123 Cal.App.3d 1045, 1050-1051, stated: "A constitutional amendment adopted in 1974 elevated the right of privacy to an 'inalienable right' expressly protected by force of a constitutional mandate. (Cal. Const., art. I, § 1.) When the interest of a private litigant in discovering relevant facts conflicts with the right of others to maintain reasonable privacy regarding their financial affairs, a court must 'indulge in a careful balancing' before ordering disclosure. (See *Valley Bank of Nevada* v. *Superior Court* (1975) 15 Cal.3d 652, 657 [125 Cal.Rptr. 553, 542 P.2d 977].) It follows that a court must not generously order disclosure of the private financial affairs of nonparties without a careful scrutiny of the real needs of the litigant who seeks discovery. It does not appear that any such balancing process occurred in the proceeding which is here under review."

In this case, the trial court order recites that the court balanced "the inconvenience to and right of privacy of Dr. Samilson with the right of plaintiff to show bias on his part" and found the right to show bias substantially outweighed Dr. Samilson's rights. The court provided some protection for former patients and examinees. It also barred real party from obtaining reports of prior examinations and evaluations made at defense request. However, real party made no showing that the information sought or substantially equivalent information could not be obtained through other means, such as by conducting a deposition without production of the records. Nonetheless, the court permitted disclosure. The court abused its discretion when it failed to require a less intrusive method of discovery.[3]

At deposition, the medical expert may be asked questions directed toward disclosing what percentage of his practice involves examining patients for the defense and how much compensation he derives from defense work. To show bias or prejudice, real party need not learn the details of his billing and accounting or the specifics of his prior testimony and depositions. As petitioner points out, publications which index the testimony of medical units are available to real party. Exact information as to number of cases and amounts of compensation paid to medical experts is unnecessary for the purpose of showing a bias.

Let a peremptory writ of mandate issue compelling the trial court to vacate its order insofar as it requires disclosure of Dr. Samilson's records

---

[3]Our conclusion is consistent with *Russell* v. *Young* (Tex. 1970) 452 S.W.2d 434, where a nearly identical issue was decided by the Texas Supreme Court.

concerning other patients and examinees and to enter a new order providing protection from such discovery.

White, P. J., and Feinberg, J., concurred.