[No. D047185. Fourth Dist., Div. One. Mar. 9, 2006.]

HECHT, SOLBERG, ROBINSON, GOLDBERG & BAGLEY LLP,
Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
JAMES B. PANTHER, Real Party in Interest.

---

---

## COUNSEL

Kennerson & Grant, John K. Grant and Paul R. Kennerson for Petitioner.

No appearance for Respondent.

David Blair-Loy for Real Party in Interest.

---

## OPINION

**HUFFMAN, Acting P. J.—** ██ This writ proceeding presents an opportunity to outline the standards governing an important aspect of third party

financial discovery in legal malpractice cases. It is well accepted that "one who establishes malpractice on the part of his attorney in prosecuting . . . a lawsuit *must also prove* that careful management of it would have resulted in recovery of a favorable judgment *and collection of same* . . . ." (*Campbell v. Magana* (1960) 184 Cal.App.2d 751, 754 [8 Cal.Rptr. 32], italics added; see *Garretson v. Harold I. Miller* (2002) 99 Cal.App.4th 563, 568–569 [121 Cal.Rptr.2d 317] (*Garretson*).) We seek to determine to what extent financial discovery may be conducted, over privacy objections, about the ability to respond in damages ("collectibility") of a nonparty to the particular legal malpractice action in which discovery is sought. In this case, the legal malpractice claims against the current attorney defendants are based in part on the actions or inactions of another set of plaintiff's former attorneys in another underlying suit, and plaintiff is contending a greater recovery should have been obtained in both actions. Plaintiff is now pursuing the current attorney defendants for damages to be measured by the lost recovery allegedly caused by plaintiff's former counsel, who is the nonparty witness (petitioner). What privacy and policy concerns about discovery rights may validly be raised by such a nonparty witness in this factual context?

Our analysis of the collectibility doctrine, in light of applicable principles of discovery, leads us to conclude that the subject financial and insurance information is properly discoverable in the instant action, and it is not determinative that plaintiff's former counsel (petitioner) is not a party but is rather a witness in this proceeding, because the information sought is relevant and material to the causation and damages elements of the plaintiff's current legal malpractice cause of action. On this record, the trial court adequately balanced the relevant privacy concerns and issued a protective order to appropriately address them. We deny the petition, but issue this opinion in an effort to clarify the admittedly confusing California case law on the notion of collectibility in this factual context. (*Garretson, supra,* 99 Cal.App.4th at p. 570.)

## I

## BACKGROUND

### A

### IDENTIFICATION OF PARTIES AND PROCEEDINGS

In the case before us (the instant action), the third party from which discovery is sought is petitioner Hecht, Solberg, Robinson, Goldberg & Bagley, LLP (Petitioner Firm), a law firm which formerly represented this

plaintiff, real party in interest James B. Panther (Plaintiff), in a real estate transaction (the real estate matter). After Plaintiff lost his investment in the real estate matter, he sued the Petitioner Firm for legal malpractice. (*Panther v. Hecht Solberg* (Super. Ct. San Diego County, 2000, No. GIC 743628) (underlying action).) Petitioner Firm then settled Plaintiff's underlying action against it. Now, Plaintiff is suing the Chapin firm and Steven A. Micheli, and the Mazzarella firm and Mark C. Mazzarella (the Attorney Defendants), who were the lawyers who participated in obtaining that settlement for him in the legal malpractice action arising from the real estate matter.[1] Plaintiff is contending these Attorney Defendants were negligent and obtained too small a settlement with the Petitioner Firm in the underlying action, thereby giving rise to this "trial within a trial within a trial" format.

When the Petitioner Firm, on privacy grounds, opposed a deposition subpoena for production of business records, including information about its financial condition (as well as liability insurance policies and the security it has made available as required by the law governing limited liability partnerships), Plaintiff brought a motion to compel discovery, which was granted. The trial court ordered Petitioner Firm to supply Plaintiff with the requested information within specified time frames, subject to a protective order.

In this petition for writ of mandate, Petitioner Firm seeks to overturn those orders, on the grounds that (1) no such detailed information should be required to satisfy the "collectibility" requirement in Plaintiff's instant action, (2) the trial court failed to give adequate weight to Petitioner Firm's privacy rights, particularly since financial information is involved and it is a nonparty to these current proceedings, and (3) the information could have been adequately obtained through other means, such as through deposition of its managing partner or independent inquiry to the Secretary of State, with whom this limited liability partnership is registered. (Corp. Code, § 16951 et seq.; all further statutory references are to this code unless otherwise specified.) To analyze these contentions, we set forth further factual background.

B

"TRIAL WITHIN A TRIAL WITHIN A TRIAL"

■ In conducting the "trial-within-a-trial" of a legal malpractice case, "the goal is to decide what the result of the underlying proceeding or matter

---

[1] The full names of the Attorney Defendants in the subject complaint are Chapin, Fleming, McNitt, Shea & Carter and Steven A. Micheli; and Mazzarella, Dunwoody & Caldarelli and Mark C. Mazzarella. Various cross-actions have been filed but they are not within the scope of these writ proceedings.

*should have been*, an objective standard." (4 Mallen & Smith, Legal Malpractice (2006 ed.) § 33.1, pp. 926–927, fns. omitted (Mallen & Smith).) "The trial-within-a-trial concept may become a trial-within-a-trial-within-a-trial. This alliteration occurs when the attorney hired to bring a legal malpractice action also allegedly committed legal malpractice. The plaintiff must then show that the defendant attorney was negligent, that the prior attorney also was negligent, and finally that a better result should have been obtained in both underlying actions." (*Id.* at pp. 927–928, fns. omitted.)

Beginning in 1995, Petitioner Firm represented Plaintiff and other participants in a Carlsbad real estate development (referred to in the complaint as the Project; referred to here as the real estate matter). Plaintiff alleges that he lost his multimillion-dollar interest in the project when some of the other participants foreclosed upon him, based on the manner in which the Petitioner Firm had structured the project. He sued those participants, and other cross-actions were filed.

In February 2000, Plaintiff sued the Petitioner Firm for legal malpractice (underlying action), alleging that the legal representation provided to him in the real estate matter was negligent because the Petitioner Firm had failed to obtain any waivers of potential conflicts of interest among the various participants, and had engaged in numerous other forms of legal malpractice and breaches of fiduciary duty. Specific allegations were made about the professional activities of several individual partners, who were also named defendants in the underlying action. Some discovery took place and the Petitioner Firm disclosed that it carried $4 million in liability insurance coverage.

In addition to the $3.5 million pled as damages in the underlying complaint, Plaintiff asserted that he was damaged in the amount of approximately $4.5 million through the loss of the property, which had increased in value over the years. Thus, a total of approximately $8 million in damages was sought from the Petitioner Firm, although Plaintiff now contends that the San Diego real estate market could have again increased the value of the real property in the real estate matter, such that his lost opportunities would have been of greater financial magnitude.

Petitioner Firm filed a motion for summary judgment in the underlying action, raising the bar of the statute of limitations. In approximately May 2001, Plaintiff settled that underlying lawsuit with the Petitioner Firm for an undisclosed amount. The defendant individual partners were apparently not pursued further. (See fn. 3, *post.*)

Next, in April 2002, Plaintiff sued the Attorney Defendants in the instant action, on the basis that the Attorney Defendants' representation of him from 1999 on was negligent, including with respect to the underlying action filed against the Petitioner Firm. He claims that the settlement he had reached with the Petitioner Firm, on defendants' advice, was "premature, insufficient and ill-advised" and "was for amounts smaller than the actual value of the case would have been but for the deficiencies caused by the available statute of limitations defense [sic]." Plaintiff further alleges that the Petitioner Firm was insured, "solvent and any judgment less than $50,000,000 was in fact collectible." Accordingly, Plaintiff claims that he has been "substantially damaged as the result of the premature settlement of [the underlying action]," and that the Attorney Defendants caused this damage (the same $8 million previously alleged).

As amended, Plaintiff's complaint against the Attorney Defendants is pled in terms of negligence, breach of fiduciary duty, breach of written and oral contract against the Chapin firm and/or Micheli, breach of written, oral and contingency contracts against the Mazzarella firm, and declaratory relief. According to the complaint, the Attorney Defendants knew or should have known that the Petitioner Firm was a "potential if not essential defendant in any claim for damages" arising out of its representation of Plaintiff, and the Attorney Defendants knew this while pursuing other defendants; however, as to the Petitioner Firm, they negligently failed to obtain a tolling agreement or file an action to obtain a stay.

Eventually, in February 2004, all pending actions arising out of the real estate matter were resolved in a global settlement. Trial in the instant action was scheduled for February 2006.

In March 2005, Plaintiff sought production of documents from the Petitioner Firm through a deposition subpoena for production of business records, regarding (a) documents showing the income, assets, liabilities and/or net worth of the firm; (b) insurance policies providing any coverage for professional liability arising from errors, acts, or omissions of the firm or its predecessors; and (c) documents or statements filed by the firm with the Secretary of State pursuant to section 16956.

Petitioner Firm resisted, on the basis that it was not a party to this action and it, as well as its individual partners, were all entitled to privacy on financial matters, absent a sufficient showing to the contrary. Plaintiff's response was this motion to compel production of documents in compliance with the deposition subpoena.

## II

## CHALLENGED RULING; REVIEW

After oral argument held in August 2005, the trial court issued its tentative and final rulings to grant Plaintiff's motion to compel the Petitioner Firm to produce documents. Originally, the court intended to require production of the subject documents as created up until the time of hearing, but it then modified the order to allow production only of documents created up until the time the global settlement was implemented in the related litigation involving the real estate matter, or until March 31, 2004. Production was therefore ordered, subject to a protective order in a form submitted by counsel and approved by the court, responsive to the following requests:

"1. Any and all balance sheets, profit and loss statements, credit applications, or other documents itemizing or recording the income, assets, liabilities and/or net worth of [Petitioner Firm] or any predecessor of said firm, from and including January 1, 1999 to [March 2004].[2]

"2. Any and all insurance policies providing any coverage for professional liability arising from errors, acts, or omissions of said firm or any predecessor occurring from and including January 1, 1995 to [March 2004], including but not limited to primary coverage, supplemental or excess liability coverage, and/or coverage policies.

"3. Any and all documents or statements filed by said firm or any predecessor with the Secretary of State pursuant to Corporations Code section 16956 from and including January 1, 1995 to [March 2004]."[3]

In explaining its reasoning, the court relied on *Garretson, supra,* 99 Cal.App.4th 563, 571, but acknowledged that it does not specifically address a discovery dispute. The court nevertheless found its discussion of collectibility

---

[2] Although the court order refers to discovery of the Petitioner Firm's assets and net worth from January 1, 1999, Plaintiff in his opposition to the petition in this court states that such discovery should be allowed from 2000 forward, apparently because his underlying malpractice action was filed against the Petitioner Firm in February of 2000. The moving papers and reporter's transcript of the hearing are consistent with this version. We accordingly deem the order as issued to include the 2000 date, not 1999, based on this concession by plaintiff, and the trial court should correct its order accordingly.

[3] Plaintiff acknowledges here that the Petitioner Firm's tax returns are not discoverable and only nontax documents are being requested. (*Schnabel v. Superior Court* (1993) 5 Cal.4th 704, 719–720 [21 Cal.Rptr.2d 200, 854 P.2d 1117].) Plaintiff also acknowledges that discovery is sought only from the Petitioner Firm (partnership) and not from its individual partners, and states that any issues about private financial information of individual natural persons will be addressed separately in the trial court, if necessary.

instructive, as follows: " 'The attorney's negligence causes the plaintiff to lose only that portion of the underlying judgment that could have been collected.' (*Garretson*[*, supra*], 99 Cal.App.4th 563, 571.) Here, there are allegations that the current defendants' negligence resulted in plaintiff recovering less from [Petitioner Firm] than plaintiff believes he was entitled to recover. To the extent that plaintiff prevails against these current defendants for their errors in relationship to the action against [Petitioner Firm], the measure of damages will be that which these current defendants could have collected against [Petitioner Firm]. Thus, plaintiff must know how much it could have collected against [Petitioner Firm] in order to prove the extent of his damages in this case."

Further, the trial court relied on general discovery principles to conclude that there is no reason to put off discovery of this information: " '[As] a general rule discovery with respect to all triable issues of fact should be completed before the case goes to trial. This rule applies even though one issue may not be reached because of the determination of another issue adversely to the party seeking discovery.' [Citation.]" The trial court continued, "Plaintiff may or may not prevail in its action against defendants, and may or may not ever reach the issue of collectibility against [Petitioner Firm]. However, discovery is still appropriate to allow the parties to prepare for trial."

With respect to the general categories of items sought, the court's order noted that the liability insurance policies are discoverable "to avoid a situation where any party argues language in the policy precludes coverage in this matter." Further, the Petitioner Firm's filings with the Secretary of State "are not beyond the reach of discovery, even if they are ultimately inadmissible at trial. Corporations Code section 16956, subdivision (d) does not preclude discovery in this case. [Former] Code of Civil Procedure section 2017, subdivision (a) only requires that the matter subject to discovery be either admissible, or reasonably calculated to lead to the discovery of admissible evidence. Here, this information appears reasonably calculated to lead to the discovery of admissible evidence regarding plaintiff's damages." (Now see Code Civ. Proc., § 2017.010.)

After Petitioner Firm filed its mandamus petition, this court issued an order to show cause why the relief requested should not be granted. No stay was issued because the parties stipulated that the discovery would not be pursued until this court resolved the petition.

In general, appellate courts will conduct writ review of discovery rulings only in limited situations, such as cases in which "(1) the issues presented are of first impression and of general importance to the trial courts and to the profession [citation], (2) the order denying discovery prevents a party from having a fair opportunity to litigate his or her case [citation], or (3) the ruling compelling discovery would violate a privilege [citation]." (*Johnson v. Superior Court* (2000) 80 Cal.App.4th 1050, 1061 [95 Cal.Rptr.2d 864] (*Johnson*).) Such appellate review of discovery rulings is conducted under an abuse of discretion standard. (*Ibid.*) "Where there is a basis for the trial court's ruling and the evidence supports it, a reviewing court will not substitute its opinion for that of the trial court." (*Ibid.*)

Under this approach, it is appropriate for this court to evaluate the claims presented in light of these ongoing issues of public importance and the difficulty of obtaining appellate review of such interim orders. (*Johnson, supra,* 80 Cal.App.4th 1050, 1061; see *Venture Law Group v. Superior Court* (2004) 118 Cal.App.4th 96, 101 [12 Cal.Rptr.3d 656] [writ review of discovery orders appropriate where privileges are asserted].)

## III

## CAUSATION AND DAMAGES IN A LEGAL MALPRACTICE CASE: COLLECTIBILITY OF AN UNDERLYING JUDGMENT AS A COMPONENT THEREOF

### A. Principles

■ To recover against the Attorney Defendants, Plaintiff must prove each of these elements of his cause of action for professional negligence: "(1) [T]he duty of the professional to use such skill, prudence, and diligence as other members of [the] profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence. [Citation.]" (*Garretson, supra,* 99 Cal.App.4th 563, 568.)

■ In *DiPalma v. Seldman* (1994) 27 Cal.App.4th 1499, 1507 [33 Cal.Rptr.2d 219] (*DiPalma*), the court analyzed the causation and damages requirements of proving a legal malpractice claim. The court noted that the "element of collectibility does not apply to every legal malpractice action. An attorney's liability, ' "as in other negligence cases, is for all damages directly and proximately caused by his negligence." ' [Citation.] It is only where the alleged malpractice consists of mishandling a client's claim that the plaintiff

must show proper prosecution of the matter would have resulted in a favorable judgment and collection thereof." Such facts, alleged mishandling of a client's claim (as opposed to provision of a defense or other advice), are directly before us here.

■ Although such a plaintiff is not required to offer proof that establishes causation "with absolute certainty," a plaintiff is still required to " ' "introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result." ' [Citation.]" (*Viner v. Sweet* (2003) 30 Cal.4th 1232, 1243 [135 Cal.Rptr.2d 629, 70 P.3d 1046].) In the legal malpractice context, the elements of causation and damage are particularly closely linked. It is difficult to consider a plaintiff's claim that the defendant attorney's proper handling of an underlying matter would have resulted in a favorable judgment that could be collected, without evaluating the amount of such a favorable judgment. The plaintiff has to show both that the loss of a valid claim was proximately caused by defendant attorney's negligence, and that such a loss was measurable in damages. (*Ibid.*) In this sense, collectibility of the hypothetical underlying judgment against the named defendant is a component of the plaintiff's current case relating to damages, as caused by the current negligent attorney defendant, and is a fact-intensive inquiry.

It is useful to consider the various factors bearing upon the issue of collectibility of an underlying judgment, in order to establish the proper guidelines for discovery. Collectibility is part of the plaintiff's case, and a component of the causation and damages showing, rather than an affirmative defense which the Attorney Defendants must demonstrate. (*Garretson, supra,* 99 Cal.App.4th at pp. 569–572, reviewing case law, e.g., *Lally v. Kuster* (1918) 177 Cal. 783, 788 [171 P. 961]; *Campbell v. Magana, supra,* 184 Cal.App.2d at p. 754; *Walker v. Porter* (1974) 44 Cal.App.3d 174, 178 [118 Cal.Rptr. 468].) Collectibility is not a question only of the solvency of the defendant in an underlying case, such as in bankruptcy, but rather pertains to the defendant's ability to pay a judgment or some part of it. (Mallen & Smith, *supra,* § 30.17, pp. 490–491.) Collectibility is not an all or nothing question, but rather concerns the measure of damages, which should not exceed the sum that could have been collected. (*Id.* at p. 492.) Collectibility thus "looks to the actual circumstances to determine whether the judgment 'would have been collectable.' " (*Id.* at p. 494, fn. 40.) It is not enough for a plaintiff to present speculation or assumptions about an underlying defendant's ability to respond in damages, as opposed to proof of same. (*Garretson, supra,* at pp. 573–574.) Admissible evidence on collectibility can include information about the basic solvency of the defendant in the underlying case, as shown by its assets, net worth or available proceeds from investments. (*DiPalma, supra,* 27 Cal.App.4th 1499, 1509.)

In the case before us, Petitioner Firm relies on the court's statement in *Garretson, supra,* 99 Cal.App.4th 563, that "a malpractice plaintiff need only have proven he could have collected *something* from the defendant in the case-within-a-case, and it is that amount that is the proper measure of his damages in the malpractice action." (*Id.* at p. 572.) Petitioner Firm claims that there is enough evidence already available (regarding its prior insurance coverage of $4 million at the relevant times, together with Plaintiff's own allegations about the firm's presumed solvency up to $50 million) to show *something* could have been collected from it, if the underlying settlement now being objected to had not been reached. About $8 million is now being sought from the Attorney Defendants. Petitioner Firm therefore argues no further discovery should be necessary regarding its financial condition, and that Plaintiff can presumably prove the "full extent of his damages" against the Attorney Defendants without the requested specific financial information, because it can be deduced from the existing record that any underlying larger judgment against Petitioner Firm, over the settlement, would have been collectible "in some amount."

Petitioner Firm's arguments read the "some" and "something" language of *Garretson, supra,* 99 Cal.App.4th 563, 571–572, out of context. In *Garretson,* the court was analyzing these causation issues only for the purpose of reviewing a judgment notwithstanding the verdict (JNOV), under a substantial evidence standard. The court upheld the JNOV in favor of the defendant attorney, because there, the plaintiff had failed to provide any evidence that if the defendant attorney had not been negligent, she (plaintiff) would actually have been able to collect any judgment against the potential third party defendants. The collectibility issue was never tried and therefore, the plaintiff had failed to supply any proof establishing that she lost an underlying judgment of any value that was really collectible; the speculation and assumptions that she offered were not enough to satisfy the substantial evidence standard. (*Id.* at pp. 572–573.)

Accordingly, the statement in *Garretson* on which the Petitioner Firm is relying regarding collecting "something" was made in the context of analyzing whether that plaintiff's case could withstand a motion for JNOV, on a substantial evidence basis, and the court's statement was not intended to define the element of collectibility by restricting or expanding the amount of proof that a malpractice plaintiff must present regarding whether he or she incurred damages from the alleged legal malpractice. Rather, the malpractice plaintiff must try the issue and present evidence to show that but for the defendant attorney's negligence, the plaintiff could otherwise have collected a valuable judgment from the defendant in the underlying case. (*Garretson, supra,* 99 Cal.App.4th at p. 572.) Accordingly, *Garretson* is not authority for the idea that any minimal showing, speculation or not, hearsay or not, allegations or not, is enough for a malpractice plaintiff to prove collectibility

of "some" of an underlying lost claim. (*Id.* at p. 575 ["[t]he positive authority of a decision is coextensive with its facts].")

Specifically, Petitioner Firm is now attempting to rely on its interrogatory responses in the underlying case, which are effectively hearsay at the present time, with respect to the amount of available liability insurance coverage. Those responses do not address any coverage issues or exclusions. (See pt. C., *post*; Evid. Code, §§ 1200 et seq., 1520 et seq. [secondary evidence rule].) It is not enough for the Petitioner Firm in this case to suggest that the record already adequately shows it had some available liability insurance at the relevant times, or that it was in generally good financial standing as a partnership. Rather, pretrial discovery on these matters is appropriate, because collectibility is a fact-intensive inquiry, and the record does not currently demonstrate that the malpractice plaintiff already has access to all necessary evidence, or to material that will lead to such evidence, on the issues of his alleged damage by loss of a valid underlying claim or judgment, and in what amount, and whether it could actually have been collected. The issue must be tried, based on evidence, and a showing of hypothetical injury is not enough to carry the plaintiff's burden on such a cause of action. (*Garretson, supra,* 99 Cal.App.4th at pp. 572–573.)

To provide the required proof, going beyond the allegations of its own complaint or the record in the underlying case (previous discovery responses), this malpractice plaintiff is pursuing discovery from a nonparty witness, who, not coincidentally, is also its former and allegedly negligent counsel. We next address the privacy and related issues raised by this situation.

B. Standards Governing Discovery; Privacy Issues

█ Code of Civil Procedure section 2017.010 et seq. provides the framework allowing a party to "obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action . . . if the matter either is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence." (See *Johnson, supra,* 80 Cal.App.4th 1050, 1062.) In *Ameri-Medical Corp. v. Workers' Comp. Appeals Bd.* (1996) 42 Cal.App.4th 1260 [50 Cal.Rptr.2d 366] (*Ameri-Medical Corp.*), the court discussed the scope of allowable financial discovery when privacy issues are raised concerning an artificial entity defendant: " ' "[T]he relevance of the subject matter standard must be reasonably applied; in accordance with the liberal policies underlying the discovery procedures, doubts as to relevance should generally be resolved in favor of permitting discovery [citation]." [Citation.]' The right to privacy in disclosure of financial information affects the scope of discovery. [¶] 'Our

right to privacy is guaranteed and protected by state and federal Constitutions.' [Citation.] . . . However, '[t]he constitutional provision simply does not apply to corporations. The provision protects the privacy rights of *people.'* (*Roberts v. Gulf Oil Corp.* (1983) 147 Cal.App.3d 770, 791 [195 Cal.Rptr. 393].)" (*Ameri-Medical Corp., supra,* 42 Cal.App.4th at pp. 1287–1288.)

█ Although it is arguable whether a corporation or other artificial entity may have the necessary standing to assert a constitutional right to privacy, some privacy rights even for such an artificial entity are recognized by the law: " 'Although corporations have a lesser right to privacy than human beings and are not entitled to claim a right to privacy in terms of a fundamental right, some right to privacy exists. Privacy rights accorded artificial entities are not stagnant, but depend on the circumstances. [Citation] . . . "However, we think one cannot draw a bright line at the corporate structure. The public attributes of corporations may indeed reduce *pro tanto* the reasonability of their expectation of privacy, but the nature and purposes of the corporate entity and the nature of the interest sought to be protected will determine the question whether under given facts the corporation *per se* has a protectible privacy interest. . . ." [Citation.] [¶] It is clear to us that the law is developing in the direction that the strength of the privacy right being asserted by a nonhuman entity depends on the circumstances. Two critical factors are the strength of the nexus between the artificial entity and human beings and the context in which the controversy arises.' (*Roberts v. Gulf Oil Corp., supra,* 147 Cal.App.3d at pp. 796–797.)" (*Ameri-Medical Corp., supra,* 42 Cal.App.4th at pp. 1287–1288.)

In *Connecticut Indemnity Co. v. Superior Court* (2000) 23 Cal.4th 807, 817–818 [98 Cal.Rptr.2d 221, 3 P.3d 868] (*Conn. Indemnity*), our Supreme Court was presented with claims of constitutional and statutory privacy rights of certain corporate entities, but held that these were properly to be submitted to the trial court in the first instance, so that the Supreme Court declined to rule upon them. However, the court was willing to assume without deciding that such corporate entities have such privacy rights, even in light of *Roberts v. Gulf Oil Corp., supra,* 147 Cal.App.3d 770, 791–793, "[corporate entities have no privacy rights under art. I, § 1 of the Cal. Const.]." (*Conn. Indemnity, supra,* at p. 817; see also *H & M Associates v. City of El Centro* (1980) 109 Cal.App.3d 399, 409 [167 Cal.Rptr. 392] [a partnership may state a cause of action for invasion of privacy].)

In the case before us, Petitioner Firm is a registered limited liability partnership, formed for the practice of law, and it has complied with the requirements of section 16956 to provide security for potential judgments against it. As a partnership, it is considered a separate entity from its individual partners, but of course, the individuals who make up the partnership are

human beings who have privacy rights. The Petitioner Firm raises several concerns in this regard: Does it make any difference here that it "bought its peace" in the underlying litigation, when it settled Plaintiff's malpractice action against it, such that it should not be further required to disclose financial information for that reason? Also, does it make any difference that the focus on financial condition in the underlying litigation would have been on the real estate matter defendants, not on Petitioner Firm? Petitioner Firm argues its financial condition would only have become discoverable if judgment on the merits was entered against it in the underlying action, and collection of that judgment became necessary. (Cf. Code Civ. Proc., § 680.010 et seq. [enforcement of judgments].)

Like the Supreme Court in *Conn. Indemnity, supra,* 23 Cal.4th 807, we need not decide in this case any broad issues of the scope of privacy rights to which an artificial entity or partnership is entitled, as compared to those of the individual partners. Rather, we may assume without deciding that such an entity has such privacy rights. The issue specifically before us is an ordinary discovery problem that falls within the recognized framework for discovery in civil cases: What should be the proper balancing of the requested discovery and its relevance to the subject matter involved in the pending action, and whether it "appears reasonably calculated to lead to the discovery of admissible evidence," as opposed to any countervailing considerations, such as privacy and privilege? In general, the discovery procedures are liberally applied and "doubts as to relevance should generally be resolved in favor of permitting discovery [citation]." (*Ameri-Medical Corp., supra,* 42 Cal.App.4th at p. 1287.)

Based on the nature of the collectibility aspect of the malpractice plaintiff's cause of action as outlined above, as an important component of the overall causation and damages showing required for recovery, we cannot say that the Petitioner Firm is protected from the requested discovery on a wholesale basis on any of the grounds urged. Rather, the normal balancing process is adequate to deal with the concerns raised. The effect of the underlying settlement to buy its peace at that stage of the proceedings does not serve to protect Petitioner Firm's financial information from a limited degree of disclosure in the current action, in which it is technically a third party witness, which is, like any other witness, properly subject to the deposition subpoena served. Even assuming the Petitioner Firm has protectible financial privacy rights, those rights do not preclude discovery that is relevant to the essential issues in the case, such as collectibility, since the malpractice plaintiff can show the requested information is relevant and material to prove that a better result should have been obtained for him by the current Attorney Defendants (or the information will lead to such admissible evidence), within the usual discovery rules. Causation and damages are inextricably intertwined here. Nor do the rules of law or statutes involved create any requirement of a

bifurcated proceeding, in which a complete showing of liability must be made before any damages inquiry or financial discovery can be conducted. (Cf. Civ. Code, § 3295, subd. (c) [regarding proof of financial condition for punitive damages].) We need not and cannot create such a scheme by judicial decision.

In light of the above considerations, we next address each category of discovery sought, and with respect to what time periods. We do this in the context of the protective order issued, which has not been discussed in depth by either party in these proceedings. We note, however, that it appears to be a standard protective order which appropriately imposes confidentiality and restricts the availability of the documents produced to the use of the court, the named parties and their attorneys, and expert consultants or litigation personnel. (See fn. 3, *ante.*)

### C. Application; Alternative Means

In the instant action, Plaintiff is seeking approximately $8 million in damages from the Attorney Defendants, based on the alleged lost opportunity stemming from the underlying action against the Petitioner Firm, based in turn on the real estate matter. The record thus far consists of Plaintiff's own allegations and Petitioner Firm's previous disclosures about liability coverage. We seek to determine whether the trial court abused its discretion in ordering further disclosures as follows.

We first take note that Petitioner Firm is not justified in relying on *Allen v. Superior Court* (1984) 151 Cal.App.3d 447, 453 [198 Cal.Rptr. 737] (*Allen*) to argue that alternative means of inquiry must first be followed before conducting a deposition subpoena for business records. In that case, the court was dealing with the privacy rights of former patients and examinees of a physician, who was a defense medical expert witness in the case, and it held that the trial court abused its discretion when it failed to require a less intrusive method of discovery. The court of appeal reasoned that the party seeking this discovery, for the purpose of impeachment, had "made no showing that the information sought or substantially equivalent information could not be obtained through other means, such as by conducting a deposition without production of the records." (*Ibid.*) At such a deposition of the doctor, questions could be asked to obtain the essential information (what percentage of the witness's practice involved examining patients for the defense and how much compensation he was paid for defense work), so the requests for the number of cases and amounts of compensation paid (e.g., details of billing and accounting) were not necessary for the purpose of showing any bias on his part. (*Ibid.*)

As part of its reasoning, the court in *Allen*, *supra*, 151 Cal.App.3d 447, 453 cited authority to the effect that " 'a court must not generously order disclosure of the private financial affairs of nonparties without a careful scrutiny of the real needs of the litigant who seeks discovery.' " There, the court declined to allow the requested discovery, because it was unnecessary for the declared purpose of showing the witness's purported bias. (*Ibid.*) However, the court in *Allen* did not establish any blanket rule that other means must be explored first before discoverable information may be sought through a deposition subpoena for production of business records. Instead, the holding was specific on the impeachment issue presented, which was the real need being addressed. Here, as already noted, the focus of the requested discovery is on proving the Plaintiff's case as to causation and damages, and therefore he can show the Petitioner Firm has relevant information that is not in any way peripheral to the actual dispute. As a threshold matter, the order here does not violate the principle established by *Allen* that disclosure of the private financial affairs of nonparties will not be ordered without justification based on " 'the real needs of the litigant who seeks discovery.' " (*Ibid.*) We now turn to the specifics of the order.

### 1. Liability Insurance Policies

Production was ordered as to: "Any and all insurance policies providing any coverage for professional liability arising from errors, acts, or omissions of said firm or any predecessor occurring from and including January 1, 1995 to [March 2004], including but not limited to primary coverage, supplemental or excess liability coverage, and/or coverage policies." The court noted that the liability insurance policies are discoverable "to avoid a situation where any party argues language in the policy precludes coverage in this matter."

We first set out the statutory guidelines for such proposed discovery. Under Code of Civil Procedure section 2017.210: "A party may obtain discovery of the existence and contents of any agreement under which any insurance carrier may be liable to satisfy in whole or in part a judgment that may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment. This discovery may include the identity of the carrier and the nature and limits of the coverage. A party may also obtain discovery as to whether that insurance carrier is disputing the agreement's coverage of the claim involved in the action, but not as to the nature and substance of that dispute. *Information concerning the insurance agreement is not by reason of disclosure admissible in evidence at trial.*" (Italics added.)

Consistent with these guidelines, information may be discoverable even if not admissible at trial, if it will lead to admissible evidence. Here, Plaintiff's theory is that the insurance policies will be relevant to show how

much money could have been collected from the Petitioner Firm, if a substantial judgment had been entered against it, as opposed to the settlement amount. Plaintiff is seeking approximately double the amount of coverage already revealed in the underlying action, so he seeks to know all additional sources that could have been made available if the underlying case had been timely pursued. Possibly, the policies will also contain financial information about the applications for coverage, which will be subject to the protective order. (See fn. 3, *ante*.)

We agree with the trial court that the liability insurance policies are discoverable "to avoid a situation where any party argues language in the policy precludes coverage in this matter." It is not an answer for the Petitioner Firm to suggest that a deposition of its managing partner be taken to disclose the insurance policy amounts, or the extent of coverage, because the insurance policies themselves may lead to admissible evidence about the extent of coverage provided and whether coverage would have been contested. Production would also avoid hearsay problems and secondary evidence problems. (Evid. Code, §§ 1200 et seq., 1520 et seq., *Pajaro Valley Water Management Agency v. McGrath* (2005) 128 Cal.App.4th 1093, 1107–1108 [27 Cal.Rptr.3d 741].)

The parties argue back and forth whether the insurer in the underlying action rejected a reasonable settlement demand and may therefore be subject to potential bad faith liability. Those issues are beyond the scope of this discovery writ. The discovery we authorize today does not mean that a full-fledged bad faith insurance coverage dispute stemming from the underlying action will occur at any trial of the instant action, nor should it. The only issue before us is whether the trial court acted within its discretion in ordering production of the policies for the subject time period. The order was proper because they are not shown to be privileged and may lead to admissible evidence on the collectibility question, and no abuse of discretion has been shown.

### 2. Secretary of State Filings

Production was ordered as to: "Any and all documents or statements filed by said firm or any predecessor with the Secretary of State pursuant to Corporations Code section 16956 from and including January 1, 1995 to [March 2004]." As the trial court noted in its ruling, Petitioner Firm's filings with the Secretary of State "are not beyond the reach of discovery, even if they are ultimately inadmissible at trial. Corporations Code section 16956, subdivision (d) does not preclude discovery in this case."

Under section 16956, subdivision (a), a registered limited liability partnership must, at the time of registration pursuant to section 16953, provide

security for claims against it. The statute further provides, in section 16956, subdivision (d), "Neither the existence of the requirements of subdivision (a) nor the extent of the registered limited liability partnership's or foreign limited liability partnership's compliance with the alternative requirements in this section shall be admissible in court or in any way be made known to a jury or other trier of fact in determining an issue of liability for, or to the extent of, the damages in question."

These statutes do not provide any specific guidance for purposes of controlling discovery in this factual context. However, they are consistent with the general civil discovery framework as outlined above, and the trial court could properly order these filings regarding security to be disclosed because they are relevant to the issues presented on collectibility as part of causation and damages (by potentially leading to admissible evidence about the extent of assets available to satisfy any underlying judgment). Nor was the trial court required, under the analysis of *Allen, supra,* 151 Cal.App.3d 447, to order independent assets investigation by Plaintiff or independent inquiries to the Secretary of State before he sought this information from the Petitioner Firm, which is a nonparty witness that has relevant information on a material issue in the instant action.

### 3. *Financial Information*

Production was ordered as to: "Any and all balance sheets, profit and loss statements, credit applications, or other documents itemizing or recording the income, assets, liabilities and/or net worth of [Petitioner Firm] or any predecessor of said firm, from and including *January 1, 1999* to [March 2004]." (Italics added.) As noted (see fn. 2, *ante*) such discovery should instead be allowed from *February 2000*, because the underlying malpractice action was filed against Petitioner Firm in February of 2000. This represents a very broad request, which Petitioner Firm is understandably resisting. However, admissible evidence on collectibility can include information about the assets or net worth of the defendant in the underlying case. (*DiPalma, supra,* 27 Cal.App.4th 1499, 1509.) The trial court heard argument on Petitioner Firm's legitimate privacy concerns and issued a protective order to address them, and limited the time frame of the order to the period up until the global settlement was reached, which was theoretically the end of Plaintiff's hypothetical opportunity to accomplish a greater recovery in the underlying action or the real estate matter. An appropriate degree of balancing was conducted and no abuse of discretion has been shown.

## DISPOSITION

The petition for writ of mandate is denied. Each party is to bear its own costs.

O'Rourke, J., and Aaron, J., concurred.